**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Terry COLBERT, Defendant–Appellant.**

**No. 91–2057.**

United States Court of Appeals, Sixth Circuit.

Argued May 14, 1992.

Decided Aug. 11, 1992.*

---

* This decision was originally issued as an "unpublished decision" filed on August 11, 1992.

J. Michael Buckley (argued and briefed), Office of U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Arthur L. Morman (briefed), Detroit, Mich., for defendant-appellant.

Before: JONES and GUY, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.

KRUPANSKY, Senior Circuit Judge.

Defendant, Terry Colbert (Colbert), appealed his sentence on eight counts of making false declarations before a grand jury or court in violation of 18 U.S.C. § 1623. After a jury trial, Colbert was convicted on all counts and received a total sentence of

On September 15, 1992, the court designated the opinion as one recommended for full-text publi- cation.

135 months, the maximum sentence within the defendant's sentencing range of 108 to 135 months.

In October of 1986, the defendant voluntarily approached a member of the Detroit Police Department and stated that he had information concerning the notorious Chambers brothers' crack cocaine organization. Billy and Larry Chambers operated an extensive crack cocaine distribution network in Detroit, Michigan, which purportedly generated narcotics sales of as much as $200,000 a day.[1] Colbert admitted being an active member in the Chambers organization, i.e., he began as a delivery person and was promoted to lieutenant in the organization. He agreed to become a confidential informant for the police and the Drug Enforcement Agency (DEA) and to provide detailed information concerning the manner in which the organization recruited personnel, advertised its cocaine, including all aspects of its modus operandi. In return for his cooperation, Colbert requested and received immunity from prosecution for his role in the organization, in addition to over $16,000 in expenses for over a period of two years, protection, relocation to Florida and Tennessee, and three job opportunities.

The defendant's information was the basis for at least 75 percent of the 101 search warrants executed by the Detroit police and DEA during the investigation of the Chambers organization. His information was corroborated by other confidential informants.

Colbert appeared as a witness on two occasions before federal grand juries, as well as at the cocaine conspiracy trial of the brothers Chambers on October 6 and 7, 1988. After the trial, Colbert was arrested by the Detroit police on an unrelated matter and was found to have in his possession two letters from Larry Chambers, who was already in prison, which contained excerpts of defendant's grand jury testimony and DEA investigative reports concerning the Chambers organization. On October 27, 1989, authorities at the federal correction institute, where Billy Chambers was confined, tape recorded a telephone conversation between inmate Billy and Colbert during which Billy instructed the defendant as to the manner in which he was to conduct himself and the manner in which he was to recant his testimony during future court appearances involving the Chambers brothers. In exchange for his cooperation, Colbert requested money.

On June 14, 1989, Colbert appeared and testified as a defense witness during a court proceeding which addressed motions for a new trial which had been filed by the Chambers brothers. During his appearance, Colbert recanted his previous grand jury and trial testimony against the Chambers brothers. As a result of the material discrepancies in his previous grand jury and trial testimony and his testimony during the court hearing on the Chambers brothers' motion for a new trial, the defendant was charged in an eight count indictment filed in the Eastern District of Michigan on October 24, 1990 for making false declarations before a grand jury and/or court on June 14, 1989. He pleaded not guilty to all counts on January 31, 1991 and was detained without bond. Colbert's perjury trial commenced on March 19, 1991, and the jury returned guilty verdicts on all counts on March 27, 1991, after deliberating less than two hours.

In determining the defendant's sentence, the probation department first applied the perjury provision of the Guidelines, U.S.S.G. § 2J1.3(c)(1), which provides that when an offense of perjury or subornation of perjury attaches to a criminal offense, the court must cross-reference to section 2X3.1,[2] the accessory after the fact provi-

---

**1.** Fourteen members of the organization were convicted of conspiracy with intent to possess and distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846; possession with the intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1); possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c); tax evasion in violation of 26 U.S.C. § 7201; and continuing

criminal enterprise in violation of 21 U.S.C. § 848. Their convictions were affirmed by this Court in *United States v. Chambers*, 944 F.2d 1253, 1256 (6th Cir.1991).

**2.** This section provides:
 (a) Base Offense Level: 6 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 30.

sion, in calculating a defendant's sentence. Accordingly, the defendant was assigned a base offense level of 30,[3] a criminal history score of II, and a guideline range of 108 to 135 months imprisonment.

The defendant filed objections to the presentence report. Specifically, he asserted that the appropriate base offense level for the offense of perjury was 12 pursuant to section 2J1.3(a) and that the probation department erroneously applied section 2J1.3(c)(1) which cross-referenced to section 2X3.1 because his perjury conviction was not related to or did not arise from the commission of a collateral criminal offense since he had not been convicted as a principle or aider and abettor in the underlying criminal action against the Chambers brothers. He also argued that he should not have been assigned two criminal history points for his prior possession of a controlled substance for which offense he had received three years probation coupled with a six-month placement in a halfway house. The probation department conceded that the defendant should have received only one criminal history point for his service in the halfway house and revised the presentence report accordingly. The defendant's criminal history score nevertheless remained at level II.

On July 31, 1991, the district court adopted the probation officer's calculation of the defendant's base offense level of 30 and sentencing range of 108 to 135 months. Before sentencing the defendant, the judge stated that

> [t]his type of behavior, on behalf of this type of a criminal gang, is so reprehensible that, of course, that it absolutely cannot be tolerated. Your behavior in this instance, when coupled with your prior criminal behavior, which I'm satisfied involved your participation in the Chambers gang's operation, displays total lack of respect for the criminal justice system, and—and if this sort of behavior is not harshly punished, it certainly would serve to undermine the entire sys-

tem of criminal jurisprudence. So I think the Court—why the Court reached the conclusion that your sentence must be severe, indeed.

In calculating the defendant's sentence, the court, in package number one, sentenced the defendant to sixty months of confinement on each of counts one through four to be served concurrently with each other; in package number two, the court sentenced the defendant to sixty months confinement on each of counts five and six to be served concurrently with each other; in package number three, the court sentenced the defendant to fifteen months confinement on each of counts seven and eight to be served concurrently with each other. Package number two was to be served consecutively with package number one and package number three was to be served consecutively with package numbers one and two, aggregating 135 months of actual confinement. The judgment and commitment order was filed on August 1, 1991.

With a court approved extension, the defendant timely filed his notice of appeal on September 10, 1991.

■ In his first assignment of error, the defendant urged that the district court erred in calculating his sentence arguing that the court was limited to imposing only concurrent sentences in a multiple count indictment. This assignment of error is without merit. When sentencing on multiple related counts of conviction, a sentencing court is directed to U.S.S.G. section 5G1.2(d) which provides that

> [i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concur-

---

**3.** Although the presentence report did not indicate how the probation officer arrived at this figure, the government, during the sentencing hearing, stated that the Chambers brothers re-

ceived a base offense level of 36 which was reduced by six levels pursuant to § 2X3.1(a), resulting in a base offense level of 30.

rently, except to the extent otherwise required by law,

for the appropriate procedure in determining the total punishment when sentencing on multiple related counts. *See United States v. Parks*, 924 F.2d 68, 72 (5th Cir. 1991). Pursuant to 18 U.S.C. § 3584, the trial court has the discretion to fashion a sentencing package using both concurrent and consecutive sentences. *United States v. Brown*, 920 F.2d 1212, 1216 (5th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2034, 114 L.Ed.2d 119 (1991); *United States v. Bentley*, 850 F.2d 327, 328 (7th Cir.1988), *cert. denied*, 488 U.S. 970, 109 S.Ct. 501, 102 L.Ed.2d 537 (1988). When determining whether to impose consecutive sentences, the sentencing judge must consider the following factors as set forth in 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner ...

> \* \* \* \* \* \*

> (5) any pertinent policy statement issued by the Sentencing Commission ... that is in effect on the date the defendant is sentenced....

In the instant action, the sentencing court concluded that the sentence imposed upon the defendant should be severe because the defendant's behavior had been reprehensible and displayed a total lack of respect for the criminal justice system, i.e., he voluntarily approached the Michigan Police Department, became an informant for both the police and the DEA, testified at grand jury proceedings and the Chambers

trial in return for immunity, and then recanted his incriminating testimony, for which he requested money, at the hearing on the Chambers defendants' motions for a new trial. The court sentenced the defendant to the maximum period of confinement within the defendant's sentencing range of 108 to 135 months, adhering to the principles set forth in section 5G1.2(d) of the Guidelines and 18 U.S.C. §§ 3553 and 3584.

■ The defendant's second assignment of error is equally without merit. He charged that the district court erred when it applied the accessory after the fact provision of U.S.S.G. section 2X3.1, in calculating his base offense level for committing perjury pursuant to section 2J1.3(c). In determining the propriety of cross-referencing to section 2X3.1, a district court must determine if the perjury was "in respect to a criminal offense," and if so, "the court must apply § 2X3.1 if [its] application ... would result in a greater sentence than determined under the other sections of § 2J1.3." *United States v. Pierson*, 946 F.2d 1044, 1046 (4th Cir.1991).

Section 2J1.3(c)(1) of the Sentencing Guidelines states as follows:

> If the offense involved perjury or subornation of perjury in respect to a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above.

Whether the underlying offense involved in perjury was "in respect to a criminal offense" is a finding of fact to be resolved by the district court during sentencing which is subject to a clearly erroneous standard of review. *United States v. Mallory*, 904 F.2d 37 (6th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 157, 112 L.Ed.2d 122 (1990) (unpublished per curiam). The record in the instant case disclosed that the defendant's alleged perjured testimony was intended to persuade the district court to grant the Chambers brothers a new trial. Therefore, the defendant's perjured testimony "was in respect to the criminal offense" of conspiracy with intent to possess and distribute cocaine, the underlying offense for which the Chambers

brothers were tried and convicted. Accordingly, the district court's application of section 2J1.3(c)(1) was not clearly erroneous.

 The defendant next asserted that because he was never convicted of any drug trafficking offense, section 2X3.1 would not apply to his case. Section 2X3.1 provides:

> (a) Base Offense Level: 6 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 30.

Application note one to section 2X3.1 defines "underlying offense" as the "offense as to which the defendant is convicted of being an accessory." Accordingly, the defendant need not have been convicted of the underlying offense which prompted the perjury in order to invoke section 2X3.1. *Pierson*, 946 F.2d at 1047; *United States v. Gomez–Vigil*, 929 F.2d 254 (6th Cir. 1991). Therefore, the legal issue seeking de novo resolution is whether the defendant was an accessory after the fact to the Chambers brothers' cocaine conspiracy. *Pierson*, 946 F.2d at 1048. The record reflects that the defendant had been a member of the Chambers' drug distribution system; that he had volunteered to be an informant and to testify against the Chambers organization if he would be given immunity and other specified considerations; that the defendant's testimony during those trials had been corroborated by other confidential informants; that he had been arrested in an unrelated matter and was found to have in his possession two letters from Larry Chambers containing excerpts of defendant's grand jury testimony and DEA reports; that Billy Chambers had advised the defendant how he should recant his original testimony during the court hearing on a pending motion for a new trial filed by the Chambers for which the defendant would receive bribe money; and that the defendant actually had testified at a hearing on the Chambers brothers' motions for a new trial and had recanted his earlier testimony. From the facts before it, the district court had correctly concluded that the defendant had been an unindicted co-conspirator and an active member of the Chambers drug distribution organization,

and that he had been granted immunity from prosecution in exchange for testimony against the brothers Chambers. Accordingly, the court did not err when it determined that the defendant was an accessory after the fact when he committed perjury to assist the Chambers brothers in obtaining a new trial. Therefore, the court properly sentenced the defendant pursuant to section 2X3.1 using the Chambers brothers' base offense level of 36, from which six levels were deducted, resulting in a base offense level of 30.

The defendant's final assignment of error is also without merit. He charged that his indictment was multiplicitous, and therefore, the consecutive sentences were incorrectly applied. His failure to enter the objections to the indictment prior to trial constituted a waiver of the objection. Moreover, the defendant made no effort to show cause for the court to grant him relief from the waiver. Fed.R.Crim.P. 12(f); *United States v. Petitjean*, 883 F.2d 1341 (7th Cir.1989). This court concludes that the defendant's remaining assignments of error are equally without merit.

Based upon the briefs and arguments of counsel, the district court's disposition of the instant action is hereby AFFIRMED.