NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0596n.06

Case No. 09-1151

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 07, 2010
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DONALD WAYNE FLINT, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BATCHELDER, Chief Judge; MOORE and COOK, Circuit Judges.

**ALICE M. BATCHELDER, Chief Circuit Judge.** The defendant appeals his conviction

for sex trafficking of children and interstate transportation of a minor for prostitution. We affirm.

**I.**

On June 18, 2007, the defendant Donald Flint (a.k.a. "Black") and his cousin James Roney

(a.k.a. "Man") took a trip from their current hometown of Cleveland, Ohio, to their former

hometown of Detroit, Michigan, so that Flint could deliver a dog (a pit bull named "Baby Girl") to

his then six-year-old son, who was on visitation with his birth mother in Detroit for the summer.

Flint and Roney took two women on the trip with them: Chaunita Crawley (a.k.a. "Shay") and

"Jane" (a.k.a. "Boss").[1] Jane was only 15 years old, but routinely lied about her age, claiming to be

older. She had been living on the street, exchanging sex for drugs and shelter, for some period of

---

[1]Because "Jane" was a minor at the time of the incidents in this case, we have withheld her true name.

time, and Flint, Roney, and Crawley thought she looked and acted older. Even one of the arresting officers testified that she did not immediately suspect that Jane was a minor.

The four left Cleveland at about 12:30 in the afternoon, bound for Detroit in Roney's Suburban. None of them brought a change of clothes or any overnight items. Only Flint brought money, about $400: some to pay Roney for the trip (Roney never had any money), some to give to his son, and some in case of an emergency. Only Crawley brought any identification.

When they arrived in Detroit, Flint's son was not at home, so they went to see one of Roney's relatives. They then went to the All-Star Club, a nude-dancing establishment operated by another of Roney's relatives, to try to get the girls some work there, but neither of the girls had proper paperwork. Thus thwarted, Flint and Roney discussed the possibility of having the girls engage in a little prostitution, but instead, they bought some marijuana, smoked it, and drove around the city, sightseeing. They slept in the Suburban that night and rented a hotel room the next day — Crawley rented the room and Flint paid for it. During the day, Flint took the women to a store to buy hair extensions and clothing. Flint also bought some more marijuana and some ecstasy, which the two women quickly ingested. Also, at some time or times during the day and evening, Roney had sex with both of the women and Flint had sex with Jane in the hotel room. At one point, Roney and Flint both had sex with Jane at the same time.

That night, Roney and Flint took the two women to a location known as "the track," an area where prostitutes go to meet customers, so that the women could make some money as prostitutes. At some point, the two women met a customer and took him to a hotel (not the room in which the four had been staying) and had sex with him in exchange for $60. They gave the money to Roney

and Flint and returned to the track, though they did not stay together. Jane apparently wandered off and found yet another customer with whom she had sex. Meanwhile, Crawley and Roney went to his sister's house and Flint visited his mother's grave. But, during the evening, undercover police surveying the area had taken note of the two women because they were dressed alike and were unknown to the police officers, who were familiar with the regular prostitutes.

At about 7:00 a.m. on the following morning, the police followed Crawley and Roney to the hotel where they met up with Flint. The police approached and while they were questioning these three, Jane arrived (having been gone for several hours). Initially, the three claimed not to know her, but eventually they admitted that they knew her (and she them), though none of them knew her real name (nor did she know their real names). One of the prostitution-task-force officers suspected that Jane was a minor and asked her age. She said she was 20, but after persistent questioning from the officer, she finally admitted that she was 15. It was later determined that she was, in fact, 15.

Flint waived his *Miranda* rights and spoke with the police in a recorded interview. During the interview, Flint admitted that he had had sex with Jane several times, but insisted that he did not know she was underage. When one of the officers suggested that Flint might have raped Jane, Flint was emphatic that the sex was consensual and never forced. He explained that Jane was a "bopper" — someone who liked to smoke marijuana and have sex all the time — and at one point, even insisted that he would find a prostitute and pay for sex rather than committing rape; Flint never suggested that Jane was herself a prostitute.

Federal prosecutors charged Flint with: (1) Conspiracy, 18 U.S.C. § 371; (2) Sex Trafficking of Children, § 1591; (3) Interstate Transportation of Minors for Prostitution, § 2423(a); and (4)

Interstate Transportation for Prostitution, § 2421.  The case proceeded to jury trial, where Crawley and Jane, along with three of the arresting officers, testified for the prosecution.  Flint testified in his own defense, which was two-fold.  First, he insisted that did not know that Jane was a minor — according to Flint, Crawley, and even one of the testifying officers, Jane looked like an adult (particularly in her street-hardened condition and the clothes and wig she had been wearing); Jane carried herself as an adult and frequented adult-only establishments in Cleveland, where Flint had seen her numerous times in the company of other, older men; and Jane told everyone she was 18, or sometimes that she was 20.  On the other hand, Jane testified that before leaving Cleveland, she had told Roney and Flint that she was 16.  Even though she was actually 15, this was still an assertion that she was a minor.

Flint's second defense was that before leaving Ohio, neither he nor any of his compatriots had intended to become involved in prostitution, and the idea of prostitution had come up only after they were in Detroit.  Flint testified that the purpose of the trip had been to bring a dog to his son and that they had not intended to stay any longer than was necessary to deliver the dog, which was why none of them had brought any clothes or overnight items.  In fact, Crawley testified that the prostitution was her idea and that she had not formed the idea until they had been rebuffed at the strip club.  Jane testified that no one had mentioned prostitution to her until after they were in Michigan, but claimed that — looking back on the trip — Roney and Flint had given "little clues" about prostitution on the drive up, though she could not remember even a single one of those comments or clues.  The government argued that the jury could infer that Flint and Roney had the requisite intent while still in Ohio because they had brought these two women on the trip, because

they had so quickly upon arrival taken these two women to "the track," and because, at least according to Jane's testimony, Flint had "coached" Jane in how to be a prostitute, e.g., where to stand, what to say, and how much to charge.

The jury acquitted Flint on counts one and four, but convicted him on counts two and three: sex trafficking of children and interstate transportation of minors for prostitution, respectively. The court sentenced Flint to 135 months in prison and Flint now appeals. He raises two issues on appeal: (1) that the evidence was insufficient to support the conviction because he did not actually know that Jane was a minor and he did not form any intent regarding prostitution before leaving Ohio; and (2) that he was subjected to double jeopardy because the charge of sex trafficking of children is subsumed into the charge of interstate transportation of minors for prostitution.

## II.

Flint argues that the evidence produced at trial was insufficient to support his convictions. A conviction is supported by sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

### Sex Trafficking of Children

Flint claims that his conviction for sex trafficking of children, 18 U.S.C. § 1591, cannot be upheld because the evidence produced at trial was insufficient to prove: (1) an effect on interstate commerce; (2) that he had the intent, while in Ohio, to transport the victim out of state to engage in prostitution; or (3) actual knowledge of the victim's age. The statute states, in pertinent part:

5

> Whoever knowingly[,] . . . in or affecting interstate . . . commerce, . . . recruits, entices, harbors, transports, provides, or obtains by any means a person[,] . . . [while] knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided [herein].

18 U.S.C. § 1591(a) (2006).[2]

Flint first argues that the government did not prove an effect on interstate commerce because the evidence was insufficient to prove that the idea for prostitution was formed while the foursome was still in Ohio. The government responds that Flint waived this argument by failing to develop it on appeal. We do not agree that Flint has waived this argument, but we find it meritless. Nothing in the language of the statute requires that the formation of the idea and the carrying out of the idea occur in different states, *see United States v. Evans*, 476 F.3d 1176, 1178-79 (11th Cir. 2007), and in ruling on Flint's "Motion for Judgment Notwithstanding the Verdict," the district court noted that Jane did engage in prostitution upon arriving in Michigan; Flint purchased drugs, clothing, hair extensions, and fake nails, arguably to further the prostitution activity; and Flint rented a room in a hotel that serves out-of-state travelers. This is sufficient evidence to persuade a reasonable juror that Flint's activities affected interstate commerce.

Flint next argues that the government did not prove that Flint transported Jane for the purpose of her engaging in commercial sex because no witness testified that there was a plan of prostitution prior to their arriving in Michigan. Citing *Evans*, the government responds that § 1591 does not require the defendant to conceive an intent prior to crossing state lines, but even if it did there is ample evidence from which a juror could infer that Flint had such an intent. Because § 1591 does

---

[2]This statute was amended effective December 23, 2008. Throughout this opinion, we refer to the prior version of the statute because it was in effect when Flint was charged and convicted.

not require interstate transportation of the victim, Flint's argument is unavailing. The government produced direct evidence of Flint's participation in Jane's prostitution (the offense is committed by one who "recruits, entices, harbors, transports, provides, or obtains by any means"). Jane testified that Flint had coached Jane in how to be a prostitute, e.g., where to stand, what to say, and how much to charge. Crawley substantiated this testimony in part. There was further testimony that Flint rented a hotel room (where he harbored Jane), drove her to and around Detroit (transporting her), and purchased items for her that would further her prostitution, such as drugs, condoms, clothes, hair extensions, and fake finger nails (at very least, enticing her). Viewing this evidence in a light most favorable to the prosecution, a rational juror could have concluded that the government had proven this element. *See Jackson*, 443 U.S. at 319.

Flint also argues that the government did not prove that Flint actually knew that Jane was a minor. He contends that she presented herself as an adult in her words and actions, such that others — including a police officer — were also mistaken about her age, so "[h]e was reasonable in his ignorance, and utterly lacking in his knowledge of her actual age." The government points to direct evidence of Flint's knowledge: Jane testified that, before the group left for Detroit, she told Flint and Roney that she was only 16 years old. Viewing this evidence in a light most favorable to the prosecution, we are satisfied that a rational juror could have credited Jane's testimony and concluded that the government had proven this element. *See Jackson*, 443 U.S. at 319.

### Interstate Transportation of a Minor for Prostitution

Flint claims that he cannot be held guilty of interstate transportation of a minor for prostitution in violation of 18 U.S.C. § 2423(a), because the evidence produced at trial was

insufficient to prove that he had actual knowledge of the victim's age or that he had the intent for her to engage in prostitution when he transported her across state lines. The statute provides, in pertinent part:

> A person who knowingly transports an individual who has not attained the age of 18 years in interstate . . . commerce, . . . with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined . . . and imprisoned not less than 10 years or for life.

18 U.S.C. § 2423(a).

Flint argues that the statute requires actual knowledge that Jane was a minor, and that the government did not prove actual knowledge. The government argues that knowledge of her age is not a requisite element of this statute. *See, e.g.*, *United States v. Jones*, 471 F.3d 535, 539 (4th Cir. 2006); *United States v. Griffith*, 284 F.3d 338, 351 (2d Cir. 2002); *United States v. Taylor*, 239 F.3d 994, 997 (9th Cir. 2001). But Flint counters that the Supreme Court has likely overruled those cases, *see Flores-Figueroa v. United States*, 556 U.S. --, 129 S. Ct. 1886 (2009) (holding, albeit in a different statute, that "knowingly" applies to each element in the criminal statute), and, therefore, they are of no persuasive value in answering the present question.

We need not decide the effect of *Flores-Figueroa* in the present case because, even if Flint is correct and the statute requires proof of his actual knowledge that Jane was a minor, the government has pointed to direct evidence of Flint's knowledge: Jane testified that, before traveling to Detroit, she told Flint and Roney that she was only 16 years old. This evidence, viewed in a light most favorable to the prosecution, is sufficient to permit a rational juror to conclude that the government had proven this element. *See Jackson*, 443 U.S. at 319.

Flint further argues that "[n]o evidence was presented at trial that established that Donald Flint undertook the trip to Michigan as part of a plan to have [Jane] engage in prostitution." The government counters that it need only prove that Flint transported Jane to Michigan with the intent to engage in any "sexual activity for which any person can be charged with a criminal offense," 18 U.S.C. § 2423(a), which in this case would include not only prostitution but sex with the underage victim. The government presented evidence of both. First, the government points to testimony demonstrating Flint's and Jane's ongoing sexual relationship and Flint's purchase of numerous condoms as evidence that he intended to have sex with her once they arrived in Michigan. The government also points to testimony demonstrating that, even though Jane had never before attempted commercial prostitution, the prospect of her walking "the track" came up within hours of their arrival in Detroit. And when Flint and Roney actually took her there, they knew exactly where to take her, told her exactly what to do and how much to charge, and lurked nearby while she attempted to solicit customers. Moreover, Jane testified that, during the trip to Detroit, Flint and Roney made comments ("little clues") about her engaging in prostitution, though she had not recognized their significance at the time. Viewing this evidence in a light most favorable to the prosecution, a rational juror could have credited Jane's testimony and concluded that the government had proven this element. *See Jackson*, 443 U.S. at 319.

### III.

Flint argues that the two statutes under which he was convicted, 18 U.S.C. § 1591(a) and 18 U.S.C. § 2423(a), do not have separate elements and therefore his convictions under both violate the prohibition against double jeopardy. "[W]here the same act or transaction constitutes a violation

of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The government answers that Flint has waived or forfeited this claim by failing to raise it to the district court as a pretrial challenge to the indictment. *See United States v. Hart*, 70 F.3d 854, 859-60 (6th Cir. 1995) ("As this issue [multiciplicity implicating double jeopardy] was not raised prior to trial, we find that Hart waived this issue."); *United States v. Colbert*, 977 F.2d 203, 208 (6th Cir. 1992) (holding that a defendant's failure to object to the indictment on multiplicity grounds prior to trial constitutes a waiver); *see also* Fed. R. Crim. P. 12(b)(3)(B); 12(e). We conclude that we need not resolve this issue on the merits because Flint has waived this claim by failing to raise or argue it in the district court.

## IV.

For all of the foregoing reasons, we **AFFIRM** the district court's judgment.