RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0157p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ESSEX HAYWARD; ANNIE HAYWARD; AARON HAYWARD,

        *Plaintiffs-Appellants,*

    *v.*

CLEVELAND CLINIC FOUNDATION, et al.,

        *Defendants-Appellees.*

No. 13-3132

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland
No. 1:12-cv-00002—Dan A. Polster, District Judge.

Argued: December 5, 2013

Decided and Filed: July 21, 2014

Before: CLAY and ROGERS, Circuit Judges; LUDINGTON, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Samuel S. Riotte, Chesterland, Ohio, for Appellants. James R. Wooley, JONES DAY, Cleveland, Ohio, for Appellees. **ON BRIEF:** Samuel S. Riotte, Chesterland, Ohio, for Appellants. James R. Wooley, Katie M. McVoy, JONES DAY, Cleveland, Ohio, for Appellees.

---

**OPINION**

---

CLAY, Circuit Judge. Plaintiffs Aaron, Annie, and Essex Hayward appeal the district court's orders granting Defendants' motions for judgment on the pleadings. Following an

---

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

altercation between Plaintiffs and Defendants (officers of the Cleveland Clinic Police Department ("CCPD")), which occurred at the home of Annie and Essex Hayward, Plaintiff Aaron Hayward pleaded guilty to willfully fleeing a police officer and resisting arrest, admitting that he physically injured an officer in the process. Plaintiffs subsequently filed federal civil rights claims pursuant to 42 U.S.C. § 1983 and state law tort claims against Defendants. During the extensive filing of complaints and answers, Defendants moved twice for judgment on the pleadings. The district court first dismissed some of the claims on the merits, and eventually dismissed all of the claims in an order dated January 11, 2013. Plaintiffs timely appealed the dismissal of their claims. For the reasons that follow, this Court REVERSES the district court's order dismissing Annie and Essex Hayward's § 1983 claim for illegal home entry and their state law intentional infliction of emotional distress claim, and REMANDS for further proceedings consistent with this opinion. The Court AFFIRMS the district court's order granting Defendants' motions for judgment on the pleadings as to Plaintiffs' other claims, including Aaron Hayward's § 1983 claims and Annie and Essex Hayward's state law assault claim.

# I.

# BACKGROUND

## A.    Factual Background

Plaintiffs and Defendants differ in their versions of the relevant events. Because this appeal comes before us on a motion for judgment on the pleadings, we "construe[] the complaint in the light most favorable to the plaintiff[s] [and] accept[] the plaintiff[s'] factual allegations as true." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012). Therefore, this Court considers the facts as alleged by Plaintiffs in their complaints.

Plaintiffs allege that Aaron Hayward was driving home from his parents' store early in the morning, around 4:00 a.m. on January 23, 2011, when a CCPD SUV pulled up behind him and followed him until he turned into his driveway and parked his car. Up to this point, the officer's marked SUV neither sounded a siren nor flashed its lights. The officer yelled, "Hey you, come over here, boy," at Aaron as he exited his car and entered the home that he shared

with his parents, Annie and Essex Hayward.  (R. 1, Compl., at 12.)[1]  Defendants admit that up to the time Aaron entered the home, it was not communicated to Aaron that he was under arrest.

When Aaron ignored the officer's order, the officer radioed for additional help, claiming that he was attempting to make a traffic stop, but did not indicate that there was any danger to himself or any individuals inside the home.  Approximately ten to fifteen minutes later, five additional officers arrived at the scene.  They began pounding on the Haywards' front door, demanding that they "open the fucking door."  (R. 30, Second Am. Compl., at 477.)  Plaintiffs Annie and Essex Hayward awoke to the sounds of the pounding on the door.  Once downstairs, they saw blue and red flashing lights and several men who appeared to be police officers.  Plaintiff Essex Hayward opened the main, wooden door to their home and Defendants continued trying to force their way through the outer security door.  At that time, realizing that the men were Cleveland Clinic security officers, Essex Hayward mentioned calling the actual Cleveland police to their home.  At some point during this encounter, Plaintiffs realized that the officers were wearing police badges depicting the Ohio state seal.

Plaintiffs shut the main, wooden door once again and Defendants forced open the outer security door by breaking its glass.  At this time, the outer security door now ajar, Aaron used his foot and body to prevent the officers from breaking down the main door.  So the officers became more aggressive in attempting to enter the home.  They used the butt of a shotgun to shatter the main door's small window.  Once that occurred, Annie and Essex called 911.  One of the officers then stuck a taser through the shattered window and blindly fired into Plaintiffs' home.  Eventually, Defendants struck Aaron with taser probes, which he was able to remove from his body.  The officer blindly deployed the taser for a second time, striking Aaron again and this time causing him to fall to the ground.  Once Aaron was no longer pressed up against the wooden door, Defendants broke through the main door and poured into Plaintiffs' home.  They tased Aaron again to gain control, as he continued struggling to defend and protect himself and his parents. Defendants then dragged Aaron outside to the driveway, where they allegedly beat him with their batons, kicked him in the head and other parts of his body, stunned him with a

---

[1]Citations to the record are accompanied by reference to Page ID numbers.

taser, and called him a "black nigger" before they handcuffed and officially arrested him. (*Id*. at 469.)[2] Plaintiffs claim that Aaron was tased altogether in excess of thirty seconds.

At this point, the officers demanded identification from Annie and Essex. After Essex questioned their demand, at least one of the officers threatened to punch Annie and Essex in the face, break their teeth, and take them to jail if they failed to comply with the order and present identification.

Plaintiffs allege that throughout the encounter, Aaron yelled that he had not done anything wrong, and the officers failed to indicate the purpose of the arrest. Additionally, Plaintiffs allege that they were verbally abused by Defendants, who made threats and used racial epithets throughout the encounter.

**B.      Procedural History**

After this incident, Plaintiff Aaron Hayward pleaded guilty to willfully fleeing a police officer and resisting arrest under Ohio Revised Code § 2921.33, admitting that he physically injured an officer in the process. Plaintiff and his parents, Annie and Essex Hayward, subsequently brought a § 1983 suit against the officers. In their joint complaint, they alleged various constitutional violations, including excessive force and illegal home entry, as well as various state law claims such as assault and intentional and negligent infliction of emotional distress. The district court requested additional briefing on the issue of whether Defendants were state actors such that § 1983 claims could be alleged against them. Plaintiffs subsequently filed a first amended complaint on January 10, 2012, which continued to allege the same § 1983 and state law claims, but added information to prove that the officers were, in fact, state actors. That issue is not in dispute before this Court. Defendants filed an answer and a motion for judgment on the pleadings on February 14, 2012.

Based on its interpretation of *Heck v. Humphrey*, 512 U.S. 477 (1994), the district court issued an order on April 3, 2012, explaining that Plaintiffs' first amended complaint would be

---

[2]Although the complaints assert that Plaintiff Aaron Hayward was already in custody when dragged out to the driveway, Plaintiffs' brief before this Court states that the officers "physically dragged Aaron from inside his residence to his driveway outside, where they got him under control and cuffed him." Pls.' Br. at 12. Plaintiffs do not allege additional force was used against Aaron after he was officially handcuffed and arrested.

dismissed if Plaintiffs did not submit a second amended complaint eliminating all pre-arrest claims and only including post-arrest § 1983 claims. The order stated, "To avoid application of *Heck* to their § 1983 claim, Plaintiffs must allege and prove that the Cleveland Clinic police officers used force against Aaron after the arrest had already been effectuated, *i.e.* after Aaron had been arrested and subdued." (R. 29, 4/3/2012 Order, at 462.) The district court indicated, however, that Plaintiffs could retain their state law claims in the second amended complaint as previously alleged in the first amended complaint. Thereafter, Plaintiffs filed a second amended complaint on April 13, 2012. Plaintiffs continued to allege their state law claims for assault and battery as well as intentional infliction of emotional distress. However, responding to the district court's order, they removed their claims based on the officers' pre-arrest conduct. Instead, they asserted claims for search and seizure, privacy, post-arrest excessive force, and failure to train.

Following submission of Plaintiffs' second amended complaint, Defendants again moved for partial summary judgment on the pleadings on May 4, 2012. On July 11, 2012, the district court granted the motion. Specifically, the court rejected Plaintiffs' state law claims. The court held that Annie and Essex's battery claim failed because they did not allege that "the officers touched them." (R. 50, 7/11/2012 Op. and Order, at 723.) Moreover, the court concluded that Annie and Essex's assault claim was without merit because they had not pleaded any "physical gesture . . . indicating an offensive touching was imminent." (*Id.* at 724 (internal quotation marks omitted).) Finally, the court rejected all three Plaintiffs' intentional infliction of emotional distress claims as either barred by *Heck* (Aaron) or simply without merit (Annie and Essex).

The court also determined that Plaintiffs' federal causes of action were without merit. Annie and Essex's unreasonable seizure claim was rejected because the court concluded that the force employed against them was in fact reasonable. The court also concluded that Plaintiffs' *Monell* and supervisory liability claims were meritless. Accordingly, the district court dismissed with prejudice "all the claims asserted by Plaintiffs Annie and Essex Hayward as well as Plaintiff Aaron Hayward's intentional-infliction-of-emotional-distress claim and his § 1983 claims." (*Id.* at 730.)

After the district court dismissed all but a few of Aaron's claims, Plaintiffs then moved to dismiss the remaining claims without prejudice so that they could refile in state court before the

applicable statute of limitations expired.  According to Plaintiffs, this would preserve appealable issues for the Sixth Circuit.  The district court denied Plaintiffs' motion to dismiss on December 19, 2012, because "[g]ranting the motion to dismiss would allow Plaintiffs to file the new complaint without having to justify it, thereby making an end run around this Court's order directing him to explain the reason for the amended complaint.  Granting the motion to dismiss would also be a waste of time and resources . . . . [and] would prejudice Defendants."  (R. 55, 12/19/2012 Order, at 743–44.)

On December 27, 2012, the district court issued an order allowing Plaintiffs to file a third amended complaint raising, on Aaron's behalf, pre-arrest excessive force claims: "the Court will give Plaintiff Aaron Hayward one last opportunity to file . . . an amended complaint that brings one excessive force claim against Defendants for the force they used on him prior to his arrest." (R. 57, 12/27/2012 Order, at 776.)

On January 11, 2013, the same day Plaintiffs submitted their third amended complaint asserting Aaron's excessive force claim, the district court *sua sponte* dismissed on the merits all remaining claims in the case.  The court noted that the "sole purpose for the [third amended complaint] is to provide a vehicle for *en banc* review of existing Sixth Circuit authority interpreting *Heck v. Humphrey*, 512 U.S. 477 (1994), as applied to this case."  (R. 61, 1/11/2013 Order, at 786.)  Having already determined *Heck*'s application to the case, the district court decided that "[i]t would, therefore, be a needless exercise in formalism to require the parties to re-argue that issue." *Id.* at 788.  After the district court dismissed Plaintiffs' third amended complaint, they filed this appeal.

## II.

## DISCUSSION

### A.     Standard of Review

A district court's decision to grant a party's motion to dismiss on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is reviewed *de novo*.  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  "The standard of review applicable to a motion for judgment on the pleadings . . . is the same *de novo* standard applicable to a motion to dismiss

under Rule 12(b)(6)." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399–400 (6th Cir. 1999)). "In reviewing a motion for judgment on the pleadings, we 'construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.'" *Aho v. Cleveland-Cliffs, Inc.*, 219 F. App'x 419, 422 (6th Cir. 2007) (quoting *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)); *see also JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007). Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which governs motions to dismiss, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz*, 592 F.3d at 722 (quoting *Iqbal*, 556 U.S. at 678).

**B.     Plaintiff Aaron Hayward's § 1983 Illegal Home Entry and Excessive Force Claims**

The district court dismissed Plaintiff Aaron Hayward's § 1983 claims for pre-arrest illegal entry and excessive force based on its interpretation of *Heck*.

**1.     *Heck v. Humphrey***

In *Heck*, the Supreme Court held that a plaintiff cannot assert a § 1983 claim if success on that claim would "necessarily imply the invalidity" of an underlying state criminal conviction, unless the plaintiff can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87. The Court was concerned that "§ 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254, were 'on a collision course.'" *Dyer v. Lee*, 488 F.3d 876, 880 (11th Cir. 2007) (quoting *Heck*, 512 U.S. at 492 (Souter, J., concurring)). The Court in *Heck* explained that

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 487. On the other hand, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.*

In this Circuit, there are two circumstances under which *Heck* may apply to bar a § 1983 claim. "The first is when the criminal provision makes the lack of excessive force [or the lack of an illegal entry] an element of the crime." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (citing *Heck*, 512 U.S. at 486 n.6). "The second is when excessive force [or illegal entry] is an affirmative defense to the crime . . . ." *Id.* (citing *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005), for the proposition that "an assault conviction barred an excessive-force claim because the plaintiff did not raise excessive force as a defense."). *See also Gottage v. Rood*, 533 F. App'x 546, 550 (6th Cir. 2013); *Walker v. City of Lebanon*, No. 3:12–CV–855–H, 2013 WL 6185402, at *4 (W.D. Ky. Nov. 25, 2013). In each of these circumstances, the § 1983 suit would "seek[] a determination of a fact that, if true, would have precluded the conviction." *Schreiber*, 596 F.3d at 334. Therefore, in this Circuit, if a plaintiff asserts a claim that contradicts an element of an underlying criminal offense, or if that claim could have been asserted in criminal court as an affirmative defense, *Heck* applies to bar the § 1983 suit.

In *Heck*, the Supreme Court considered a hypothetical that closely tracks the circumstances of this case. The hypothetical reads as follows:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest . . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata . . . the § 1983 action will not lie.

*Heck*, 512 U.S. at 486 n.6 (internal citations omitted). The Court noted that this statutory language is an example of the "common definition of [the resisting arrest] offense." *Id.* (citing *People v. Peacock*, 496 N.E.2d 683 (N.Y. 1986); 4C. Torcia, Wharton's Criminal Law § 593, at 307 (14th ed. 1981)). Although the hypothetical concerned a Fourth Amendment claim to be free from unreasonable seizure, the logic applies equally in other contexts. Plaintiff Aaron

Hayward pleaded guilty to resisting arrest pursuant to Ohio Revised Code § 2921.33. This Court must examine the statute to determine whether the district court properly applied *Heck* to bar Plaintiffs' § 1983 claims.

The Ohio resisting arrest statute requires as an element of the offense a "lawful arrest." Ohio Rev. Code § 2921.33. The State's resisting arrest statute reads as follows: "no person, recklessly or by force, shall resist or interfere with a *lawful* arrest of the person or another." Ohio Rev. Code § 2921.33(A) (emphasis added). "[A] 'lawful arrest' is an essential element of resisting arrest under R.C. 2921.33(A) and [an] appellant [can]not be convicted under the statute of resisting an illegal arrest." *State v. Thompson*, No. 92CA1906, 1993 WL 472907, at *3 (Ohio Ct. App. Nov. 9, 1993) (citing *State v. Lamm*, 609 N.E.2d 1286 (Ohio Ct. App. 1992)). *See also State v. Namey*, No. 99-A-0003, 2000 WL 1487638, at *4 (Ohio Ct. App. Oct. 6, 2000) ("[U]nder the plain language of the statute, a lawful arrest is an element of the crime"); *State v. Miller*, 591 N.E.2d 1355, 1357 (Ohio Ct. App. 1990) ("[W]hen a charge [i]s brought under R.C. 2921.33, the arrest must be lawful in order to convict."). Whether success on a § 1983 claim will undermine an underlying criminal conviction for resisting arrest, therefore, hinges on the meaning of "lawful arrest." If a lawful arrest can coexist with excessive force or illegal entry, and if excessive force and illegal entry are not affirmative defenses to a charge of resisting arrest, then Aaron Hayward should be permitted to proceed on his claim.

### 2.    Plaintiff Aaron Hayward's Claim for Excessive Force

The Ohio courts generally define lawfulness of arrest based on whether probable cause exists to support the arrest:

> [T]he lawfulness of an arrest is based upon the existence of probable cause. The use of excessive force may give rise to civil remedies or criminal defenses, but it does not negate the legal nature of an accused's detention for Fourth Amendment or concurrent statutory purposes. We agree . . . [that] "the absence of excessive or unnecessary force is not a material element of the crime of resisting arrest . . . . The permissible use of force when excessive or unnecessary force is used to effectuate an arrest was judicially created . . . and appears to be more of a defense than a material element."

*Thompson*, 1993 WL 472907, at *4 (quoting *Blanchester v. Newland*, Clinton App. No. CA83-07-008 (Ohio Ct. App. Sept. 17, 1984). *See also Lamm*, 609 N.E.2d at 1289 (explaining that the

appellee's arrest was unlawful because it was made without probable cause and as a result, he could not be charged with resisting arrest); *State v. Johnson*, 453 N.E.2d 1101, 1103 (Ohio Ct. App. 1982) ("Since appellant's arrest was without a reasonable basis, he could not be convicted of resisting arrest"); *City of Garfield Heights v. Simpson*, 611 N.E.2d 892, 895 (Ohio Ct. App. 1992) ("In determining the lawfulness of an arrest, the elements of an underlying offense need not be proven, but there must exist a 'reasonable basis' for the arrest"); *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005) ("To the extent probable cause exists for any of these charges, the arrest was lawful and our analysis is complete.").

That does not, however, end the inquiry. This Court and federal district courts have also suggested that a lawful arrest cannot occur if the arresting officer has used excessive force. "An arrest is not lawful, under Ohio law, if the arresting officer used excessive force." *White v. Ebie*, No. 98–3958, 191 F.3d 454, at *1 (6th Cir. Sept. 24, 1999). The Court concluded in *White* that "[b]ecause White's [excessive force] arguments attack an essential element of the resisting arrest offense, i.e., the lawfulness of the arrest, White's civil rights claim is barred by *Heck*." *Id*. Similarly, in *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005), this Court discussed application of the *Heck* hypothetical in the context of a resisting arrest claim. Although the Court was not faced with that precise scenario, it concluded in dicta that had the petitioner been convicted of resisting arrest instead of assaulting an officer, "a subsequent suit for damages would not be cognizable because a *lawful* arrest is an element of the typical offense of resisting arrest." *Id*. A federal district court in Ohio also found under Ohio's resisting arrest statute, that a claim of excessive force "falls squarely within the 'favorable termination' rule of *Heck* [and such a] claim is a direct attack on the lawfulness of the underlying arrest—which [is] an essential element of [the] resisting arrest conviction." *Jackim v. City of Brooklyn*, No. 1:05 cv 1678, 2007 WL 893868, at *7 (N.D. Ohio Mar. 22, 2007). *See also Goins v. City of Shively*, No. 3:10–CV–386–S, 2011 WL 2610519, at *3 (W.D. Ky. July 1, 2011) (applying *White* to find that "[a]n arrest is not considered 'lawful' if it was made using excessive force"); *Carroll v. County of Trumbull*, No. 4:05CV1854, 2006 WL 1134206, at *5 (N.D. Ohio Apr. 25, 2006) ("If the arresting officer used excessive force in effectuating an arrest, the arrest is not lawful under Ohio law.").

However, some Ohio appellate courts have concluded that lack of excessive force is not an element of resisting arrest. *See, e.g.*, *State v. Ellis*, No. 24003, 2011 WL 2436939, at *4 (Ohio Ct. App. June 17, 2011). In any event, as explained in *Schreiber*, the second way in which a § 1983 excessive force claim might imply the invalidity of an underlying resisting arrest conviction is if excessive force constitutes an affirmative defense to the charge. Such an affirmative defense exists in Ohio. *See* Lewis R. Katz et al., Baldwin's Ohio Prac. Crim. L. § 6:3.20 (3d ed.) ("Where excessive or unnecessary force is used in the arrest, the defendant may claim a defense to the charge of resisting arrest."). In *State v. Logsdon*, an Ohio court of appeals held that excessive force is an affirmative defense to a charge of resisting arrest, basing its decision on the Ohio Revised Code's definition of an affirmative defense. No. 13-89-10, 1990 WL 197883, at *2 (Ohio Ct. App. Dec. 4, 1990) (quoting Ohio Rev. Code § 2901.05(D)(1)(b) (West 2014), which states that an affirmative defense is "[a] defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence."). The *Logsdon* court stated:

> With an allegation of unnecessary or excessive force in a resisting arrest charge, a defendant attempts to excuse or justify his actions in the classic nature of an affirmative defense, i.e. "confession and avoidance". Thus, the defendant effectively admits his resistance, if only to show that it was necessary in order to protect himself from the officer's excessive force. The defense is peculiarly within the knowledge of the defendant because only the defendant can adequately demonstrate to the trier of fact the point at which he felt he had to protect himself from the actions of the arresting officer.

*Id*.

A number of Ohio courts have echoed this perspective, finding that excessive force is an affirmative defense that a criminal defendant must raise in response to a charge of resisting arrest.[3] One appellate court stated clearly that "[t]he use of unnecessary or excessive force by the arresting officer is a defense to the charge of resisting arrest." *Thompson*, 1993 WL 472907, at *4. More recently, an Ohio court held in *Mansfield v. Studer* that although excessive force is not an element of resisting arrest, it is an affirmative defense to a charge of resisting arrest. Nos.

---

[3]The Ohio Judicial Conference codified this holding in the Ohio Jury Instructions, under which excessive force is an affirmative defense to a resisting arrest charge. 2 Ohio Jury Instructions § 521.33 (11) (2009).

2011–CA–93, 2011–CA–94, 2012 WL 4955278, at *15 (Ohio Ct. App. Oct. 17, 2012) (citing 2 Ohio Jury Instructions § 521.33(11) (2009), *citing as authority Logsdon*, 1990 WL 197883). *See also Ellis*, 2011 WL 2436939, at *5. Therefore, a criminal conviction for resisting arrest in Ohio cannot stand where a criminal defendant successfully asserts the affirmative defense of pre-arrest excessive force; and a § 1983 claim of excessive force would necessarily imply the invalidity of an underlying conviction for resisting arrest.

This Court has, however, held that *Heck* does not bar § 1983 suits alleging *post-arrest* excessive force. In *Sigley v. Kuhn*, for example, this Court allowed a plaintiff's civil rights claim to proceed, even after he pleaded "no contest" to resisting arrest under Ohio law. Nos. 98-3977, 99-3531, 205 F.3d 1341, at *1 (6th Cir. Jan. 31, 2000). In *Sigley*, the parties did not dispute that a lawful arrest was made or that the arrestee unlawfully resisted. Instead, the § 1983 plaintiff attempted "to prove that [the defendant] used unreasonable and excessive force *subsequent* to [the plaintiff's] arrest and resistance." *Id*. at *4 (emphasis added). The Court held in the plaintiff's favor, finding that excessive force occurring after his resistance and arrest would not necessarily imply the invalidity of the underlying conviction for resisting arrest. Similarly, in *Michaels v. City of Vermillion*, 539 F.Supp.2d 975, 994 (N.D. Ohio 2008), an Ohio district court allowed a § 1983 claim for excessive force to proceed where the plaintiff had a prior conviction for resisting arrest. After considering Sixth Circuit case law on the issue, the court held that "[w]hile *Heck* bars excessive force claims that imply the invalidity of a resisting arrest conviction under Ohio law, the use of force that gives rise to an excessive force claim could potentially occur after a lawful arrest was accomplished." *Id*. at 992 (internal citation omitted). *See also Swiecicki v. Delgado*, 463 F.3d 489, 494 (6th Cir. 2006), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007), ("A synthesis of the[] [relevant] cases indicates that we must consider the nature and extent, if any, of [the plaintiff]'s resistance, paying particular attention to whether [the] alleged resistance occurred prior to the alleged use of excessive force . . . .").

Therefore, a court must carefully examine the facts and the temporal sequence of the underlying offense and the alleged unconstitutional conduct to determine whether "the alleged excessive force is used *after* the suspect ceases resisting arrest." *Michaels*, 539 F.Supp. 2d at

992.[4] Although recent case law in this Court and other circuits questions whether a civil rights claim for excessive force following resistance and arrest necessarily renders an arrest unlawful and thereby invalidates an underlying conviction for resisting arrest, Plaintiff Aaron Hayward's claim is not one to which this line of cases applies. In the instant case, even the facts as presented by Plaintiffs demonstrate that Defendants' force occurred before and during the resistance and was only used to procure the arrest. Plaintiffs asserted in their first brief before this Court that

> Defendant Officer Foglyano first used a taser against Aaron Hayward prior to any officer telling Aaron he was under arrest. Moreover, when Aaron was first tased, he posed no threat to the Defendants because he was in his home behind the security door that Defendant Howard had just shattered to assist in gaining entry into the Haywards' home without consent. When Aaron was first tased, he had not struck any officer. Aaron was then tased two more times by a Defendant as he stood in his home attempting to keep the door closed, while the officers worked together to overcome his defensive efforts. These acts constitute excessive force against Aaron.

Pls.' Br. at 30 (internal citations omitted). It is clear from this description of their encounter that the alleged excessive force occurred in response to Plaintiff's resistance and before an arrest was effectuated. This Court does not pass judgment on whether Defendants' conduct constituted excessive force. Rather, this Court acknowledges that under current Sixth Circuit precedent, pre-arrest excessive force is an affirmative defense to a charge of resisting arrest in Ohio, and would therefore render invalid a conviction for resisting arrest. Because the factual circumstances in this case indicate that Defendants' allegedly excessive force occurred during Plaintiff's

---

[4]Plaintiff cites case law from other circuits to support an argument that "multiple distinct factual contexts can exist over the course of a civil plaintiff's interaction with police officers [and that] a civil plaintiff may be lawfully arrested and convicted for resisting arrest in one context, while suffering unconstitutional excessive force in another, separate and distinct context, without running afoul of *Heck*'s favorable termination requirement." Pls.' Br. at 28. In each of these cases, the courts have allowed §1983 claims to proceed where the alleged excessive force and the resistance occurred during different, distinct moments in time. *See, e.g.*, *Hooper v. San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011); *Dyer*, 488 F.3d at 884; *Martinez v. Albuquerque*, 184 F.3d 1123, 1126–27 (10th Cir. 1999); *Nelson v. Jashurek*, 109 F.3d 142, 145–46 (3d Cir. 1997). Although these cases present strong arguments, they are not consistent with the law of this Court, which has only gone as far as to allow a § 1983 claim for excessive force where the alleged force occurred *after* the resistance and the completion of the arrest. Plaintiffs even acknowledge this fact in their Motion for Leave to File a Third Amended Complaint. (R. 56, Pls.' Mot. for Leave, at 745 ("Currently, if a § 1983 plaintiff has been convicted of resisting arrest, the Sixth Circuit '*Heck* bars' *any § 1983 claim for police misconduct if the misconduct occurs before the civil plaintiff's arrest is completed*").) And even if this Court were to adopt some of these arguments, Plaintiff Aaron Hayward's case does not present more than one factual context. Instead, the facts of this case present a single factual context in which the officers' use of force was responsive to Plaintiff's acts of resistance and occurred before his arrest.

resistance to the arrest, the district court properly dismissed Plaintiff Aaron Hayward's excessive force claim based on *Heck*.

### 3.        Plaintiff Aaron Hayward's Illegal Home Entry Claim

An unconstitutional entry makes an arrest unlawful under Ohio's resisting arrest statute. *See, e.g.*, *Ingram v. City of Columbus*, 185 F.3d 579, 587 (6th Cir. 1999) ("[I]n some circumstances, the Fourth Amendment deems unreasonable and thus unconstitutional an officer's unannounced entry into a dwelling"); *State v. Campana*, 678 N.E.2d 626, 629–30 (Ohio Ct. App. 1996) (reversing a resisting arrest conviction because the arresting officers illegally entered the home). In the latter case, the court concluded that an entry in violation of the knock and announce rule without exigent circumstances constitutes an unlawful entry. *Campana*, 678 N.E. 2d at 629–30. Similarly, in *Alley v. Bettencourt*, 730 N.E.2d 1067, 1072 (Ohio Ct. App. 1999), an Ohio court of appeals stated that "[g]enerally, officers may not lawfully make a warrantless and nonconsensual entry into a suspect's home to make an arrest," implying that an arrest is rendered unlawful, and thereby unable to support a resisting arrest conviction, when an illegal home entry occurs.

Defendants assert that by pleading guilty to resisting arrest under the Ohio statute, Plaintiff Aaron Hayward admitted that his arrest was lawful and he is therefore barred from asserting that the officers perpetrated an illegal home entry to effectuate his arrest. In response, Plaintiff primarily cites one case in support of his claim that a court will uphold a conviction for resisting arrest even where it was effectuated after an illegal home entry. *See City of Middleburg Heights v. Theiss*, 501 N.E.2d 1226 (Ohio Ct. App. 1985). However, the primary underlying criminal conviction in *Theiss* was for assault on an officer. Unlike Ohio's resisting arrest statute, Ohio's assault statute does not require a lawful arrest as an element of the offense. The court did, however, indicate that an illegal home entry renders an arrest unlawful. The court stated, "The United States Supreme Court has repeatedly held [] that searches and seizures inside a home without a warrant are presumptively unreasonable . . . . The Fourth Amendment gives [an occupant] a constitutional right to refuse to consent to entry and search. The assertion of that right cannot be a crime." *Theiss*, 501 N.E.2d at 1229 (citing *Camara v. Mun. Ct.*, 387 U.S. 523, 530–33 (1967); *Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973)). Additionally, the court

recognized that "an individual can lawfully refuse to consent to a warrantless search." *Id*. at 1230.

Plaintiff asserts that in resisting arrest, he "exercised his lawful right . . . to resist and prevent Defendants' warrantless, non-consensual and violent entry into his home . . . . Moreover, Aaron's decision to use his foot and body to keep shut the wooden door that stood between his family and the Defendants' unconstitutional and illegal entry was legal." Pls.' Br. at 34. Through this argument, Plaintiff attempts to do exactly what *Heck* bars: justify his acts of resistance and contest his conviction for resisting arrest. If Plaintiff were to succeed on an illegal home entry claim, it would render his arrest unlawful and imply the invalidity of his underlying guilty plea for resisting arrest. Therefore, the district court properly denied this claim as barred under *Heck*.

### 4.      *Powers* and the Favorable Termination Requirement

Plaintiff Aaron Hayward asserts that regardless of this Court's decisions on the preceding arguments, *Heck*'s favorable termination requirement—that the conviction or sentence has been reversed, expunged, or invalidated—does not apply to his case. He cites this Court's decision in *Powers v. Hamilton Cnty. Pub. Defender Comm'n* for the proposition that "the favorable-termination requirement does not preclude § 1983 lawsuits by persons who could not have their convictions or sentences impugned through habeas review." 501 F.3d 592, 600 (6th Cir. 2007) (citing *Heck*, 512 U.S. at 500 (Souter, J., concurring)). This Court held in *Powers* that "a § 1983 plaintiff is entitled to a *Heck* exception if the plaintiff was precluded 'as a matter of law' from seeking habeas redress, but not entitled to such an exception if the plaintiff could have sought and obtained habeas review while still in prison but failed to do so." *Id*. at 601. In *S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 638–39 (6th Cir. 2008), this Court applied *Powers* to hold that *Heck*'s favorable termination requirement does not apply where, due to the length of a sentence, a petitioner was unable to assert a habeas claim. *Powers* logically extends to situations in which petitioners elect to participate in pretrial diversion programs to avoid trial and possible jail time. For example, in one Ohio case, *Powers* applied such that *Heck* did not bar a petitioner's constitutional claims after he was merely fined for his criminal conduct and was never eligible for habeas corpus relief. *Embassy Realty Invs., LLC v. City of Cleveland*, 877 F.Supp.2d 564,

575 (N.D. Ohio 2012) (citing *Powers*, 501 F.3d at 603). In the instant case, Plaintiff Aaron Hayward pleaded guilty to resisting arrest and paid a fine rather than spending an extensive amount of time in jail. He was ineligible for habeas review because he did not serve a sentence long enough to assert a claim challenging his conviction. Therefore, he claims that *Powers* means *Heck* is inapplicable to his case.

Defendants respond by arguing that Plaintiff waived the argument after failing to assert it in the district court or, in the alternative, because Ohio collateral estoppel law bars such an argument.

The Supreme Court has repeatedly held it will not consider an argument that a petitioner failed to assert in the courts below. *See, e.g.*, *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318 n.3 (1999) ("Because this argument was neither raised nor considered below, we decline to consider it"); *Roberts v. Galen of Va., Inc.*, 525 U.S. 249, 253–54 (1999) ("Although respondent presents two alternative grounds for affirmance of the decision below, we decline to address these claims at this stage in the litigation . . . [because] these claims do not appear to have been sufficiently developed below for us to assess them . . . ."); *Dep't of Revenue v. Kurth Ranch*, 511 U.S. 767, 772 n.9 (1994) ("The issue was not raised below, so we do not address it."). Similarly, this Court explained in *Scottsdale Ins. Co. v. Flowers* "that an argument not raised before the district court is waived on appeal to this Court." 513 F.3d 546, 552 (6th Cir. 2008).[5] In *United States v. Flint*, for example, this Court was unwilling to address a double jeopardy claim that was crucial to a criminal defendant's case because it was not raised or argued in the district court. 394 F. App'x 273, 279 (6th Cir. 2010).

Plaintiffs had ample opportunity to brief this issue in their responses to Defendants' motions, yet they failed to do so. This Court deviates from the general waiver rule explained

---

[5]*See also El Bey v. Roop*, 530 F.3d 407, 412 (6th Cir. 2008) (expressing an unwillingness to apply the waiver exception where a *pro se* plaintiff failed to raise an important issue related to his *Miranda* rights in the lower court); *Cochran v. United Parcel Serv., Inc.* 137 F. App'x 768, 772 (6th Cir. 2005) (holding that plaintiff waived an argument regarding the pretext of her termination after failing to provide any exceptional circumstances that would explain her waiver and where it would not result in a miscarriage of justice to decline consideration of the issue); *United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 758 (6th Cir. 1999) ("Because the issue was not raised in the district court below, Appellants have waived their right to argue the point on appeal"); *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990) ("This court will not decide issues or claims not litigated before the district court.").

above only when it "would produce a plain miscarriage of justice" or when there are exceptional circumstances that militate against finding a waiver. *Scottsdale Ins. Co.*, 513 F.3d at 552 (internal quotation marks omitted). The following factors aid this Court in determining whether to consider a waived claim:

> 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear and beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996). This Court will exercise its discretion "to prevent manifest injustice and to promote procedural efficiency" where "the proper resolution is beyond any doubt or where injustice . . . might otherwise result." *Taft Broad. Co. v. United States*, 929 F.2d 240, 244 (6th Cir. 1991) (internal quotation marks omitted). However, issues not raised in the trial court may be addressed on appeal for the first time only if the issue "is presented with sufficient clarity and completeness and its resolution will materially advance the progress of [] already protracted litigation." *Pinney Dock & Transp. Co. v. Penn. Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988).

This Court "ha[s] rarely exercised such discretion," *Scottsdale Ins. Co.*, 513 F.3d at 552, and these factors, as applied to the instant case, do not militate in favor of allowing this Court to exercise its discretion to entertain Plaintiff's *Powers* argument. Although application of *Powers* in this case is a question of law, it is not an issue for which resolution is clear beyond doubt, and a district court should have had the opportunity to consider the facts in this case to determine whether *Powers* applies. Plaintiff has failed to demonstrate any exceptional circumstances that prevented him from asserting this argument before the district court. Plaintiff is not a *pro se* litigant. He was represented by counsel before the district court, and he continues to be represented by counsel on appeal. He had every opportunity to raise his *Powers* argument in any one of his three amended complaints or other filings before the district court, yet he failed to do so. As this Court has found waiver in far more sympathetic cases and Plaintiff fails to assert that

he is entitled to application of an exception, this Court declines consideration of Plaintiff's *Powers* argument.[6]

## C.      Plaintiffs Annie and Essex Hayward's Illegal Home Entry Claim

The district court found that *Heck* also barred Plaintiffs Annie and Essex Hayward's § 1983 illegal home entry claim.  The court, in ordering Plaintiffs to file a second amended complaint, stated as follows:

> Here, Plaintiff Aaron Hayward pled guilty in state court to resisting arrest in violation of O.R.C. § 2921.33.  Under *Heck*, Plaintiffs' claims of excessive force and unlawful entry to effectuate Aaron's arrest—including the claims of both Aaron and his parents, Essex and Annie Hayward[]—are barred to the extent that they relate to any use of force by the police officers *before* Aaron was arrested and stopped resisting arrest . . . .
>
> The amended complaint must specifically allege the application of force *after* Aaron was arrested and subdued . . . .

(R. 29, 4/3/2012 Order, at 462.)  The district court made this determination without citing any authority that extends *Heck* to the § 1983 claims of third parties.  *Heck* does not apply to third-party § 1983 claims.  In *Heck*, the Supreme Court addressed a situation where "a state prisoner seeks damages in a § 1983 suit" and a "district court [would have to] consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of *his* conviction or sentence."  512 U.S. at 487 (emphasis added).  The Court was concerned that "§ 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254, were 'on a collision course.'"  *Dyer*, 488 F.3d at 880 (quoting *Heck*, 512 U.S. at 492 (Souter, J., concurring)).  Because such a concern does not extend to the civil rights claims of third parties, the district court erred in applying *Heck* to bar Plaintiffs Annie and Essex Hayward's § 1983 claim.

On appeal, Defendants concede that *Heck* does not apply to third-party § 1983 claims.[7]  Rather than agreeing with the district court's application of *Heck*, Defendants assert that Plaintiffs Annie and Essex Hayward abandoned their claims regarding the officers' pre-arrest

---

[6]Because this Court resolves the *Powers* issue on waiver grounds, it need not consider Defendants' argument regarding collateral estoppel.

[7]Defendants conceded during oral argument that *Heck* does not bar Plaintiffs Annie and Essex Hayward's § 1983 claim.

conduct. They cite case law from various other circuits to support their claim that the elder Haywards abandoned their § 1983 claim for illegal entry when they filed the second amended complaint from which they removed all of their claims for pre-arrest conduct. Plaintiffs argue in response that because their claims were dismissed on the merits, they were not required to reassert those claims in subsequent amended complaints.

In granting in part Defendants' motions for judgment on the merits, the district court stated in its December 28, 2012 Amended Order that "[b]ecause the Court has already dismissed the Haywards' Fourth Amendment unreasonable entry claim *on the merits*, the Court will construe the proposed Third Amended Complaint as bringing only Aaron Hayward's excessive force claim against Defendants based on the arresting officers' pre-arrest conduct." (R. 58, 12/28/2012 Am. Order, at 778–79 (emphasis added).) The district court also explained that the proposed third amended complaint sought to "re-assert[] the Fourth Amendment unreasonable entry claim of Aaron and his parents . . . which latter claim the Court has already *dismissed on the merits*." (*Id.* at 778 (emphasis added).) Annie and Essex Hayward's claim for illegal home entry, therefore, was dismissed on the merits by the district court. Plaintiffs do not seek to resurrect a claim that has already been abandoned. Instead, they attempt to appeal the district court's dismissal of their claim on the merits.

Generally, amended pleadings supersede original pleadings. 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010) [hereinafter Wright & Miller] ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading."). Defendants cite cases that stand for the proposition that a plaintiff may not rely on claims asserted in a former complaint if a subsequent, voluntarily amended complaint does not include those claims. In *Clark v. Johnston*, 413 F. App'x 804, 811–12 (6th Cir. 2011), this Court applied that rule where the petitioner voluntarily amended his complaint to include additional defendants. The Court explained that because the petitioner "did not clearly indicate that he intended his amended pleading to supplement, rather than supersede, his original pleading," it was proper to consider only the amended complaint. *Id.* at 812. *See also Drake v. City of Detroit*, 266 F. App'x 444, 448 (6th Cir. 2008) ("Although Drake pleaded a claim for

abuse of process in his original complaint filed in state court, that complaint is a nullity, because an amended complaint supercedes all prior complaints"); *Tolen v. Ashcroft*, 377 F.3d 879, 882 n. 2 (8th Cir. 2004) (finding waiver where the petitioner voluntarily dismissed claims from his first amended complaint and failed to reassert them in the next complaint).

Plaintiffs did not voluntarily amend their complaints. As the district court's order indicates, they amended their complaints in response to the district court's threatened dismissal of their former complaints. The waiver rule should not be applied to the instant case. Although this Court has not clearly established a rule on this particular issue, other circuits' case law provides persuasive authority. For example, although the Ninth Circuit formerly required repleading of an argument that has already been dismissed with prejudice by the district court, it has since changed course, reflecting the general trend in other circuits. *See Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc) (internal quotation marks omitted) ("Although the general rule is that an amended complaint supercedes the original complaint and renders it without legal effect, most courts have concluded that the plaintiff does not forfeit the right to challenge the dismissal on appeal simply by filing an amended complaint that does not re-allege the dismissed claim."). The Second Circuit, too, does not require the "repleading of a claim or defense that explicitly has been denied." *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000). Currently, "[m]ost circuits refuse to require a plaintiff to replead dismissed claims in order to preserve the right to appeal the dismissal," particularly because an attempt to reallege the claim would likely be futile. *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001).[8]

"It . . . is not logical to deny a party the right to appeal simply because the party decides to abide by the court's order and amend the pleading rather than allowing an adverse judgment to be entered and taking an immediate appeal." Wright & Miller § 1476. In the instant case, where

---

[8]*See also In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("This court . . . does recognize an exception to the amended complaint rule . . . . [in circumstances where] a district court orders a party to amend its complaint or when the decision to amend is otherwise involuntary . . . ."); *Varnes v. Local 91 Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 (11th Cir. 1982) ("Varnes was not barred, by consenting to the dismissal and filing the amended complaint, from raising on appeal the correctness of the dismissal order"); *Wilson v. First Houston Inv. Corp.*, 566 F.2d 1235, 1238 (5th Cir. 1978), *judgment vacated on other grounds by First Houston Inv. Corp. v. Wilson*, 444 U.S. 959 (1979) ("[W]e hold that plaintiff, by filing an amended complaint after a dismissal with leave to amend, was not barred from raising on appeal the correctness of the dismissal order.").

the district court acknowledged that it dismissed Plaintiffs' pre-arrest claims on the merits, it would be illogical to deny them the right to appeal those claims simply because they failed to include them in subsequent pleadings. Therefore, Plaintiffs Annie and Essex Hayward did not abandon their § 1983 claim for illegal entry.

Plaintiffs Annie and Essex Hayward have alleged enough factual matter to make plausible a claim for illegal entry. *See Iqbal*, 556 U.S. at 678. Defendants assert that the officers were justified in entering Plaintiffs' home because they were in hot pursuit of Plaintiff Aaron Hayward or faced exigent circumstances. However, Plaintiffs cite sufficient facts and case law to support their argument that Defendants entered their home without an arrest warrant, without exigent circumstances or hot pursuit.

In *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 998 (6th Cir. 1994), this Court explained that "[i]n a civil damage suit, whether exigent circumstances existed to excuse a warrantless arrest is a question for the jury provided that, given the evidence on the matter, there is room for a difference of opinion." In the instant case, there is room for a difference of opinion based on the facts as alleged in the complaint. Plaintiffs assert that the officer who followed Aaron to his residence did not first approach the home to effectuate the arrest. Instead, he radioed for assistance and waited approximately ten to fifteen minutes before additional officers arrived at the scene. There is no evidence in the record indicating that Aaron posed a physical threat to himself or any individuals inside the home, and there is no indication that evidence of illegal conduct would be uncovered inside the home such that exigent circumstances required immediate entry. At this stage in the litigation, where this Court must "accept all of the complaint's factual allegations as true," Plaintiffs Annie and Essex Hayward have alleged sufficient facts to prevail over Defendants' motion for judgment on the pleadings. *Aho*, 219 F. App'x at 422. Therefore, this Court remands Annie and Essex Hayward's illegal home entry claim for further consideration by the district court.

**D.      Plaintiffs Annie and Essex Haywards' State Law Claims**

**1.      Intentional Infliction of Emotional Distress**

In addition to their federal civil rights claims, Plaintiffs Annie and Essex Hayward allege that Defendants committed intentional infliction of emotional distress on the evening in question.[9]  Under Ohio law, to prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish the following four elements:

> 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

*Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio Ct. App. 1983) (internal citations and quotation marks omitted).

In Ohio, an emphasis is placed on the seriousness of the emotional distress.  *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 453 N.E.2d 666, 671 (Ohio 1983), *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007).  "The key to liability . . . is whether the defendant's conduct in the instant matter rises to a level of outrageousness necessary to permit recovery."  *Baab v. AMR Servs. Corp.*, 811 F.Supp. 1246, 1269 (N.D. Ohio 1993).  Ohio takes direction from the Restatement Second to define "extreme and outrageous conduct":

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

---

[9]It appears that Plaintiffs also attempted to allege a claim of negligent infliction of emotional distress in their various complaints.  However, as Defendants point out, Plaintiffs failed to complete this argument in their briefs before this Court.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal citation and quotation marks omitted).  As a result, this Court does not address Plaintiffs' negligent infliction of emotional distress claim.

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 cmt. d (1965). This is a narrow definition: "[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement." *Baab*, 811 F.Supp. at 1269 (citing *Anthony v. TRW, Inc.*, 726 F.Supp. 175, 181 (N.D. Ohio 1989)). In fact, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" cannot sustain a claim of intentional infliction of emotional distress. *Yeager*, 453 N.E.2d at 671 (internal quotation marks omitted). To make out a *prima facie* case, a petitioner must be able to demonstrate that he has suffered emotional distress that is "both severe and debilitating." *Paugh v. Hanks*, 451 N.E.2d 759, 765 (Ohio 1983).

At this stage in the proceedings, where Plaintiffs Annie and Essex Hayward need only plead "sufficient factual matter to render the legal claim plausible," we believe Annie and Essex Hayward are entitled to proceed on their intentional infliction of emotional distress claim. *Fritz*, 592 F.3d at 722 (internal quotation marks omitted). As alleged, around 4:00 a.m., without announcing a reason for their disturbance, six armed, uniformed officers pounded on Plaintiffs' front door, repeatedly demanding that they "open the fucking door." (R. 30, Second Am. Compl., at 477.) Although Plaintiffs refused entry, the officers used the butts of their shotguns to break down two locked doors to enter Plaintiffs' home without a warrant or exigent circumstances. They blindly deployed tasers into Plaintiffs' occupied home while shouting racial epithets, shocked and beat Aaron Hayward while calling him a "black nigger," and then threatened an innocent, elderly couple with physical violence—all because of a few minor traffic violations. Defendants' actions resulted in Plaintiffs' emotional distress and Essex Hayward's hospitalization. These are neither "mere insults" nor "petty oppressions." *See Knox v. Hetrick*, No. 91102, 2009 WL 792357, at *9 (Ohio Ct. App. Mar. 26, 2009). To the contrary, this was a violent, traumatic invasion, effected through an alarming and unnecessary show of force.

Plaintiffs Annie and Essex Hayward have pleaded sufficient facts to make plausible a claim that Defendants' conduct "was so extreme and outrageous as to go beyond all possible

bounds of decency and was such that it can be considered as utterly intolerable in a civilized community." *Pyle*, 463 N.E.2d at 103 (internal quotation marks omitted). Therefore, we remand to allow Plaintiffs their day in court on this claim.

### 2.          Assault

Plaintiffs Annie and Essex Hayward also appeal the district court's dismissal of their assault claim. Under Ohio law, assault is defined as "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Smith v. John Deere Co.*, 614 N.E.2d 1148, 1154 (Ohio Ct. App. 1993). "The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching . . . . [And] the actor [must have known] with substantial certainty that his or her act would bring about harmful or offensive contact." *Id*.

Plaintiffs Annie and Essex Hayward allege that one of the officers threatened to punch them in the mouth if they failed to produce identification. They claim that this threat, in and of itself, was sufficient to constitute the definitive act required for success on an assault claim. Additionally, they assert that in the moments preceding the threat, the same officer violently invaded their home against their consent and tased their son for more than thirty seconds, rendering him incapacitated and in need of medical treatment.

Defendants counter, however, that although threats were made on the night in question, Plaintiffs fail to allege a sufficient definitive act accompanying these threats, as is required under Ohio law. Defendants cite *Coyle v. Stebelton*, No. 00CA74, 2001 WL 704462, at *3 (Ohio Ct. App. June 15, 2001), to support their argument. In *Coyle*, an Ohio court of appeals held in favor of an appellee who "did not make any physical gesture toward appellant indicating an offensive touching was imminent." *Id*. Without such a gesture that could constitute a definitive act toward the appellant, he was unable to prevail in proving the elements of assault. *Id*.

Even reading the facts as alleged in the light most favorable to Plaintiffs, which this Court must do when reviewing a district court's grant of a motion for judgment on the pleadings, Plaintiffs have failed to satisfy all requirements for assault under Ohio law. Although Plaintiffs were threatened by the officers, who had the apparent ability to do harm or commit an offensive

touching, Plaintiffs have not alleged facts to demonstrate the occurrence of a definitive act accompanying the threats.  The most they allege as definitive acts is the violent entry into their home and the tasing of their son.  However, Ohio tort law requires that the definitive act be perpetrated against the person alleging the assault.  *See, e.g.*, *Brooks v. Lady Foot Locker*, No. 22297, 2005 WL 1163018, at *3 (Ohio Ct. App. May 18, 2005); *Coyle*, 2001 WL 704462, at *3. Because Plaintiffs Annie and Essex Hayward have failed to demonstrate the perpetration of a definitive act against their persons, they cannot allege sufficient facts to support an assault claim. Therefore, this Court affirms the district court's dismissal of Plaintiffs' assault claim.

## III.

## CONCLUSION

Because the district court erred in granting Defendants' motion to dismiss Annie and Essex Hayward's § 1983 claim for illegal home entry and their state law intentional infliction of emotional distress claim, this Court **REVERSES** and **REMANDS** for further proceedings on those issues.  As to Plaintiffs' other claims, including Aaron Hayward's § 1983 claims and Annie and Essex Hayward's state law assault claim, the district court properly granted Defendants' motions for judgment on the pleadings; therefore, this Court **AFFIRMS** the district court's judgment as to those claims.