RONALD LEE GILMAN, Circuit Judge,
concurring.
I concur in the conclusion reached by the lead opinion and in most of its reasoning. But I respectfully disagree with the lead opinion’s conclusion that Gjokaj’s ADA and PDCRA claims fail to survive summary judgment because of the application of the “honest-belief rule.” To the contrary, I am of the opinion that a genuine dispute of material fact exists regarding whether U.S. Steel’s decisionmaker had an honest belief that Gjokaj misrepresented his medical condition.
I would nevertheless affirm the district court’s grant of summary judgment to U.S. Steel because Gjokaj has failed to demonstrate a causal connection between his back injury and his termination. Similarly, he has not pointed to any evidence in the record to support the “cats-paw” theory of liability on which he relies for his argument that the reasons given for his termination were intended to mask unlawful discrimination.
The lead opinion concludes that Simpson, the decisionmaker responsible for Gjokaj’s termination, had an honest belief that termination was justified because Gjokaj had (1) failed to follow medical directives by twice showing up late to the Plant Medical Department (PMD), and (2) made misrepresentations about his medical condition to PMD staff. I agree with the lead opinion’s analysis insofar as it relates to Gjokaj’s tardy arrivals to the PMD. Gjokaj does not dispute that he arrived late on both occasions.
But whether Simpson had an honest belief that Gjokaj had misrepresented his medical condition is a much closer question. First, the lead opinion concludes that Gjokaj admitted to making this representation during the grievance proceedings, but I find the record far from clear on this point. Simpson’s handwritten notes from those proceedings relay that Gjokaj said: “I didn’t tell [Lieb] the finger tip was cut off. I never said it was cut off.” After a recess, Gjokaj’s union representative stated that “Nua wants to explain why he said his finger was cut off.” Gjokaj then went on to say that “I might have said that [be]cause I thought it was cut off’ and that “It’s still cut off to me. L[o]sing it was different.” The union representative added both that “In [Gjokaj’s] mind, his finger was cut off’ and that “he likes to joke a lot.” A reasonable juror could conclude that Gjokaj actually denied making the alleged misrepresentation, and that his statement that he “might have said that” did not amount to an admission.
Second, and relatedly, Gjokaj explains on appeal that “amputation” is an ambiguous term because it could mean either a surgical amputation, in which the bone is severed, or a partial amputation, in which the skin is almost severed but the bone remains intact. He thus argues that any statements that he made about his finger being “cut off’ were not misrepresentations because his finger was actually partially amputated. His statement about how his finger was “still cut off to me” could *509 make sense in this context to a reasonable juror.
The medical evidence could also be viewed by a reasonable juror to support this conclusion. Dr. Ottoni’s notes indicate that a “partial amputation” occurred. Likewise, the result of Dr. Madden’s x-ray confirmed the partial amputation of the distal portion of the tip of Gjokaj’s finger. Benitez’s deposition testimony indicates that he understood that a partial amputation had occurred. Gjokaj argues that the PMD staff should have known both that Dr. Ottoni did not perform a surgical amputation and that Gjokaj’s statements about his finger being cut off were true insofar as they referred to a partial amputation. In this context, a reasonable juror could find that Simpson did not have an honest belief that a misrepresentation had occurred.
I also note that there is no indication that Gjokaj conceded, or even came close to conceding, that he “might have said” that his finger was cut off due to an infection resulting from grease and dirt specifically. This statement was instead attributed to him by Benitez and Toland. If Gjokaj had admitted to it, my conclusion might be different. But Gjokaj has offered a plausible explanation for anything that he “might have said.”
Finally, Gjokaj points out that U.S. Steel failed to produce several documents that could have shed light on whether the alleged misrepresentations occurred and on how the decisionmakers viewed those alleged misrepresentations. Benitez’s medical-summary notes, which would have been taken contemporaneously with Gjokaj’s PMD visit, are either missing or were not made. In addition, Lieb requested statements from Benitez and Toland, but never requested a statement from Dr. Madden, to whom a misrepresentation was also allegedly made. Dr. Madden’s notes from Gjokaj’s visit contain a “clarification” that “there was never an amputation of the bone,” but the notes do not explain why the “clarification” was entered, nor do they refer to any misrepresentation or statement by Gjokaj.
I acknowledge that Gjokaj admitted in his deposition to telling Dr. Madden that he could count only to 9.5. Gjokaj explained, however, that he said so in the context of explaining that he had not yet lost his finger, but worried that he might lose it after Dr. Ottoni gave him an uncertain prognosis. According to Gjokaj, having his finger cut off—i.e., partially amputated—and losing it were different, as he mentioned in his grievance hearing. U.S. Steel has offered nothing to contradict this explanation with regard to what Dr. Madden actually heard.
This court has previously concluded that, in order to invoke the honest-belief rule, an employer must conduct a reasonable investigation into the employee’s alleged misconduct. See Smith v. Chrysler Corp., 155 F.3d 799, 808 (6th Cir. 1998). Although this reasonable investigation need not be perfect or involve interviews of every possible witness, see Seeger v. Cincinnati Bell Telephone Co., LLC, 681 F.3d 274, 286 (6th Cir. 2012), Dr. Madden’s testimony is especially important in my view because she not only allegedly heard the misrepresentations, but also performed the x-ray that confirmed the true condition of Gjokaj’s finger. U.S. Steel’s failure to obtain a statement from Dr. Madden undercuts its argument that Simpson had an honest belief that the misrepresentation occurred, especially given that a genuine dispute of material fact exists with regard to whether Gjokaj actually admitted to having made any misrepresentations.
I therefore believe that Gjokaj has established the existence of a genuine dispute of material fact with regard to *510 whether Simpson had an honest belief that Gjokaj had misrepresented his medical condition. But even if I am mistaken in my analysis, I see no need to decide this difficult question. Instead, I believe that this case can be decided on much clearer grounds.
The district court granted summary judgment to U.S. Steel on Gjokaj’s ADA and PDCRA claims upon concluding both that (1) the honest-belief rule applied; and (2) Gjokaj had failed to show that Lieb, or any other supervisors who influenced Gjo-kaj’s termination, harbored any animus against Gjokaj based on his disability. The lead opinion analyzes the lack of evidence of discrimination in the context of discussing Gjokaj’s cats-paw theory. I agree with that analysis, and I write to explain my belief that the lack of animus is the crux of this case.
Gjokaj’s claims of disability discrimination are based on his back injury, which occurred almost two years before his finger injury and resulted in the need for an accommodation. I believe that Gjokaj has waived any claim based on his finger injury by failing to adequately raise the issue in his brief. See Hayward v. Cleveland Clinic Found., 759 F.3d 601, 618 n.9 (6th Cir. 2014). And in any event, Gjokaj’s finger injury cannot constitute a disability because it was a short-term impairment that was expected to heal, and that in fact did heal completely within two months. See Cardenas-Meade v. Pfizer, Inc., 610 Fed.Appx. 367, 370 (6th Cir. 2013) (noting that short-term restrictions typically do not qualify as a disability).
To prevail on his disability-discrimination claim, Gjokaj therefore has to demonstrate that discriminatory animus based on his back injury was a “but for” cause of his termination. See Tennial v. United Parcel Serv., Inc., 840 F.3d 292, 306 (6th Cir. 2016). Yet Gjokaj has produced no evidence to establish a causal link between his back injury and his termination. Gjokaj does not assert that Simpson himself ever exhibited any signs of discriminatory animus based on Gjokaj’s back injury. Although Gjokaj claimed in his deposition that various supervisors made disparaging remarks toward him based on his lifting restrictions, he could recall only a few specific remarks and was unable to remember the names of the supervisors who made them. These vague allegations cannot support an inference of discrimination because Gjokaj • failed to attribute these remarks to any supervisors who were involved in the decision to terminate him.
Furthermore, when asked what evidence he had that U.S. Steel harbored animus towards him based on his lifetime lifting restriction, Gjokaj insisted that “I just know that’s why it happened.” As the district court noted, such speculation is insufficient to raise an inference of discrimination. See Wexler v. White’s Fine Furniture, 317 F.3d 564, 584 (6th Cir. 2003) (en banc).
Gjokaj also conceded that U.S. Steel accommodated his back injury by placing him on lifting restrictions. U.S. Steel never asked him to exceed those restrictions and found work for Gjokaj to perform within those limitations. And U.S. Steel essentially promoted Gjokaj by accepting him into an advanced training program after he had injured his back. Gjokaj was successfully participating in the program at the time of his termination. These facts indicate that U.S. Steel did not terminate Gjokaj because of his back injury.
I would thus affirm the district court’s grant of summary judgment based on Gjo-kaj’s failure to meet the but-for causation requirement. For the same reasons, I agree with the lead opinion’s conclusion that Gjokaj’s cats-paw theory fails because, even assuming that Lieb played a role in *511 Gjokaj’s termination, Gjokaj failed to produce any evidence that Lieb ever made any discriminatory remarks or otherwise exhibited animus relating to his back injury. I therefore concur in the judgment rendered by the lead opinion.