NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0548n.06

No. 16-2414

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 03, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DAVID HYLKO, JR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JOHN HEMPHILL and U.S. STEEL | ) | COURT FOR THE EASTERN |
| CORPORATION, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: GUY, ROGERS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. David Hylko, Jr. and John Hemphill worked at a U.S. Steel plant in Ecorse, Michigan. Hemphill made sexual comments towards Hylko and touched him in a sexual manner. Hylko sued Hemphill and U.S. Steel for sexual harassment. The district court granted summary judgment to the defendants. We affirm.

Hylko, a shift-manager, and Hemphill, the process coordinator, worked closely together; Hemphill trained Hylko and assigned his duties. Both reported to the Area Manager Mark Jobin, who reported to the Division Manager Tom Gunnell, Jr.

According to Hylko, Hemphill began harassing him as soon as they started working together. Hemphill regularly asked Hylko about his sex life. These conversations made Hylko uncomfortable, but he went along because he believed that his "employment hinged on [Hemphill's] approval[.]"

The harassment was also physical. Hemphill twice grabbed Hylko's buttocks, saying that Hylko had a "nice firm ass." Another time, Hemphill grabbed Hylko's penis in the elevator. When they walked out, Hemphill allegedly did it again and said, "[l]ook, he doesn't even flinch." Hylko said that Hemphill grabbed him so hard that it hurt. Yet another time, Hemphill put a banana in the zipper of his pants and poked Hylko's office mate with it.

Hylko eventually told Gunnell, Jobin, and two human-resource managers about the harassment. They offered to transfer him to a different area of the plant so that he would no longer work directly with Hemphill. Hylko accepted. The four managers then met with Hemphill, who admitted to grabbing Hylko's behind and the banana incident (they did not ask him about the elevator incident). They gave Hemphill a verbal warning and a one-week suspension, demoted him to shift manager, and made him take a leadership class. Thereafter Hemphill did not harass Hylko again, though the two did still interact occasionally.

Hylko resigned a few months later. Hylko later filed this lawsuit against Hemphill and U.S. Steel asserting claims for sexual harassment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e., and under the Michigan Elliot-Larsen Civil Rights Act, M.C.L. 37.2101. The district court granted summary judgment to Hylko and U.S. Steel. Hylko now appeals.

We review the district court's decision de novo. *Livingston Christian Schools v. Genoa Charter Twp.*, 858 F.3d 996, 1000 (6th Cir. 2017). To establish a violation of Title VII (and the Michigan Civil Rights Act) based on sexual harassment, the employee must show that (i) the sexual harassment was based on his sex; (ii) the harassment created a hostile work environment; and (iii) the employer is vicariously liable for the conduct at issue. *See Clark v. United Parcel Serv.*, 400 F.3d 341, 347 (6th Cir. 2005); *Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 468 (6th Cir. 2012).

We cut to the question of vicarious liability. An employer is vicariously liable for the harasser's conduct if he is the employee's supervisor. *See Vance v. Ball State University*, 133 S. Ct. 2434, 2439 (2013). And an employee is a "supervisor" under Title VII only if he is "empowered by the employer to take tangible employment actions against the victim." *Id.* at 2454. A tangible employment action is one that effects "a significant change in [the victim's] employment status[.]" *Id.* at 2443. Here, Hemphill had the authority to assign Hylko his daily duties, but not the authority to promote, to demote, or to fire him. And though Hemphill could recommend disciplinary action against Hylko, other U.S. Steel managers could do what they liked with those recommendations. Thus, Hemphill was not authorized to effect a significant change in Hylko's employment status. *See id.*

Hylko contends that Hemphill was his supervisor because U.S. Steel and Hemphill both referred to him as such. But colloquial uses of "supervisor" do not control the question of whether an employee is one. *See id.* at 2444. "Supervisor" has various meanings in business settings, but has a specific meaning for the purposes of Title VII. *See id.* And Hemphill does not meet the legal definition of "supervisor."

Hylko argues alternatively that he reasonably believed Hemphill was his supervisor and hence that we should treat Hemphill as one here. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998). Hylko did not make this argument in the district court, however, so it is waived. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 614-15 (6th Cir. 2014).

Finally Hylko argues that, even if Hemphill was only a co-worker, U.S. Steel is still liable for his conduct because it responded unreasonably to Hylko's complaint. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813-14 & n.2 (6th Cir. 2013). Specifically, Hylko says that U.S. Steel treated men who harassed women more harshly than it treated Hemphill here.

Yet there is no requirement that an employer treat every harassment complaint the same. Rather, "a response is adequate if it is reasonably calculated to end the harassment." *Id*. at 814. Here, U.S. Steel transferred Hylko and disciplined Hemphill in response to Hylko's complaint. And Hylko concedes that these actions ended the harassment. We see no basis to reverse the district court on this ground. U.S. Steel, therefore, is not vicariously liable for Hemphill's actions. Hence Hylko's claims fail.

The district court's judgment is affirmed.