NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0247n.06

No. 22-3055

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 01, 2023
DEBORAH S. HUNT, Clerk

JAMES J. ENGLAND, )
    Plaintiff-Appellee, )
)
v. )
)
CITY OF COLUMBUS, OHIO; KEITH )
ABEL, in his individual and official )
capacity, )
    Defendants-Appellants. )
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

Before: STRANCH, MURPHY, and DAVIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** On February 6, 2015, Defendant Officer Keith Abel shot Plaintiff James England twice while apprehending him on a felony warrant. England sued Abel and the City of Columbus pursuant to 42 U.S.C. § 1983, and the Defendants moved for summary judgment. Relevant here, Defendants contended that Abel was entitled to qualified immunity and that England's claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). After the district court denied their motions, the Defendants filed this interlocutory appeal. England moved to dismiss, arguing that this court lacks jurisdiction because the Defendants' appeal does not raise purely legal issues. We **DISMISS** Defendants' appeal for lack of jurisdiction.

## I. BACKGROUND

### A. Factual Background

On February 6, 2015, Officer Abel discovered an outstanding warrant for James England for felonious assault. After gathering three other officers—Douglas Fulwider, Armando Dungey, and Kenneth Griffis—Abel went to England's house to execute the warrant. Abel covered the back of the house, and Fulwider and Dungey stood outside the front door. They told England that they had a warrant for his arrest and ordered him to open the door. England responded that he wanted to secure his two dogs first. But England never opened the front door; instead, he went out the back door of the house onto a patio. There, he encountered Officer Abel, who was armed with a TASER. Abel was in the driveway, separated from England by a patio door that was nailed or bolted shut. Abel could see into the patio only through an uncovered square-shaped opening at the top of the patio door. The bottom two-thirds of the patio door were boarded with what appeared to be plywood.

Abel ordered England not to move, and England complied. He also ordered England to come toward the door and put his hands up; England complied again, approaching the door with his hands above his head. With his TASER still drawn, Abel grabbed England's hands. At that point, the officers at the front of the house had heard Abel's orders and joined him in the back of the house behind the patio door. Fulwider joined Abel in securing England through the window opening. Fulwider placed the first handcuff on England himself and he and Abel secured the second handcuff together. The handcuffs were secured but not "locked or double locked." England remained handcuffed throughout the remainder of the encounter.

At some point, both of England's dogs, at least one of which was a pit bull, came through a dog door onto the patio. The officers asked England to control the dogs; he tried to do so but only one dog heeded his commands.

With England and at least one of his barking dogs on the other side of a bolted patio door, the officers decided to secure England by pulling him through the small window opening at the top of the patio door. Abel, who is 5'6" tall, pulled himself "onto the boarded patio door to try and control [] England," who weighed 180 pounds and was 5'9". Fulwider said Abel was standing on a bucket to gain an "improved position." By this point, Abel had fumbled and dropped his TASER and drawn his service weapon. With his firearm in his right hand, Abel attempted to lift England from the patio with his left arm. Fulwider "grabbed hold of [Abel's] gun belt to try to stabilize him as [] he went to pull [England] up." Abel felt his "weight going over the patio door and onto th[e] patio." He attributed this to England lunging forward, but he admitted that he did not see what England was doing when he felt his body weight shift. Conversely, England testified that he was "pushed forward."

The rest of the incident is undisputed. Abel fired two shots at England, striking him in the torso. England then dove through the dog door on the back door and into the house. Fulwider entered, found England on the ground handcuffed and bleeding, and dragged him out of the house by his legs. The officers took England into custody and transported him to the hospital.

In the aftermath of the incident, there was disagreement within the Columbus Division of Police (CDP) as to whether Abel's use of deadly force was in violation of police policy. The Critical Incident Response Team and Sergeant Griffis, Abel's supervisor, found that the shooting was not in violation of policy. But the Firearms/Police-Involved Death Review Board, Lieutenant David Knight, Commander Mark Gardner, and Deputy Chief Ken Kuebler found that it was not

objectively reasonable for Abel to use deadly force. Ultimately, the Chief of Police, Kim Jacobs, made a final determination that Abel did not violate policy.

In addition to the felonious assault charge that had formed the basis of the warrant, the officers charged England with resisting arrest, and he pled guilty. The sworn complaint charging England with resisting arrest stated: "[England] would not comply with officers['] orders. He tensed up and struggled with officers as they attempted to handcuff him. He then lunged forward dragging an officer over a walled partition." In 2019, England moved to withdraw his plea, but there is no record of England's initial plea hearing in 2015. England testified that he had never seen or reviewed the complaint and that the facts in the complaint differed from his version of events on February 6, 2015.

### B. Procedural History

England sued Abel for excessive force and the City of Columbus under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), pursuant to 42 U.S.C. § 1983. The Defendants moved for summary judgment, arguing that Abel was entitled to qualified immunity and that the City was not liable under any *Monell* theory and for lack of an underlying constitutional violation by Abel. In his reply brief, Abel argued for the first time that *Heck v. Humphrey*, 512 U.S. 477 (1994), barred England's excessive force claim because it would undermine the validity of his conviction for resisting arrest. England moved to strike this argument, requesting in the alternative to file a sur-reply, which was attached to the motion.

The district court denied summary judgment in full. Regarding Abel's entitlement to qualified immunity, the court held that genuine disputes of fact precluded a finding that there was no constitutional violation. Specifically, the court reasoned that:

> When the dust settled, critical questions were left unanswered. First, what caused
> Officer Abel to tip forward? Did his weight shift because Mr. England lunged in a

late-stage attempt to overtake Officer Abel—or merely because gravity affected his perch atop the plywood? Second, did Officer Abel know, or should he have known, that Mr. England was handcuffed? Did Officer Abel himself fasten the second cuff on Mr. England's wrist—or did he reasonably believe that Mr. England's hands were unrestrained? Whether Officer Abel had probable cause to believe that Mr. England posed an imminent threat of serious physical harm, and the use of deadly force was therefore justified under the circumstances, turns on these questions of fact. Accordingly, summary judgment is not appropriate.

*England v. City of Columbus*, No. 2:19-cv-1049, 2021 WL 5998530, at *7 (S.D. Ohio Dec. 20, 2021). Additionally, the court held that England's right to be free of excessive force was clearly established:

Construing the facts in the light most favorable to Mr. England, this case presents a circumstance in which a suspect was handcuffed on a partially-enclosed patio with two aggressive dogs, but was complying with officer commands, was not physically resisting the officers' grasp, made no verbal threats to the officers, and was not armed. The arresting officer, who had drawn his service weapon, lost his balance and feared falling into the enclosure with the suspect and the dogs. Though a precarious scenario, *the suspect* was not the source of any threat. *The suspect* in this case was subdued and nondangerous—and had a constitutional right not to be shot.

*Id.* at *8 (citing *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 567-68 (6th Cir. 2016)).

The district court considered England's sur-reply and addressed Abel's untimely arguments regarding *Heck*'s applicability on the merits. It held that England's excessive force claim was not barred by *Heck* because "the factual basis of Mr. England's guilty plea is unclear at best, and because [his] pre-handcuffing conduct could form the sole basis of that plea, Mr. England's excessive force claim does not necessarily imply the invalidity of the [resisting arrest] conviction." *Id.* at *10.

Finally, as to the City's municipal liability, the district court held that there were genuine disputes of fact whether Chief Jacobs's approval of Abel's use of deadly force "constitute[d] or confirm[ed] the existence of a City policy that deadly force may be used on a suspect when a CDP

officer subjectively—but unreasonably—fears for his life," and if any ratification was a moving force behind England's injury. *Id.* at \*12.

The Defendants timely filed this interlocutory appeal, arguing that the district court erred in (1) denying Abel qualified immunity; (2) holding that England's excessive force claim was not barred by *Heck*; and (3) denying the City summary judgment for lack of an underlying constitutional violation by Abel. England moved to dismiss for lack of jurisdiction, arguing that the appeal is based on factual disputes, and he also moved for sanctions for filing a frivolous appeal.

## II. ANALYSIS

On appeal, Defendants contend that the district court erred in denying Abel qualified immunity and raise two other issues—whether *Heck* bars England's excessive force claim and whether the City is liable under *Monell*. We review the district court's order de novo. *Jones v. City of Elyria*, 947 F.3d 905, 913 (6th Cir. 2020). At summary judgment, a government official is entitled to qualified immunity unless, viewing the record evidence in the light most favorable to the plaintiff, a reasonable jury could find that (1) the defendant violated a constitutional right and (2) that right was clearly established. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013). We begin with our jurisdiction.

The courts of appeals have jurisdiction to review "final decisions" from the district courts, 28 U.S.C. § 1291, but final decisions are not necessarily "the last order possible to be made in a case." *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985) (quoting *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 152 (1964)). Typically, the denial of summary judgment is not immediately reviewable, but a district court's denial of qualified immunity—"to the extent that it turns on an issue of law"—is a final decision suitable for review. *Id.* at 530. We do not, however, have

jurisdiction to review appeals that seek to challenge a district court's "determination that the summary judgment record . . . raised a genuine issue of fact." *Johnson v. Jones*, 515 U.S. 304, 313 (1995). A defendant must generally "concede the most favorable view of the facts to the plaintiff" to invoke this court's jurisdiction. *Adams v. Blount County*, 946 F.3d 940, 948 (6th Cir. 2020). Where independent appellate jurisdiction lies, we may also exercise pendent jurisdiction over issues that are "inextricably intertwined" with a claim of qualified immunity. *Meals v. City of Memphis*, 493 F.3d 720, 727 (6th Cir. 2007).

England argues we lack jurisdiction because this appeal is an impermissible fact-based challenge to the district court's determination that genuine disputes of material fact exist regarding Abel's entitlement to qualified immunity. Defendants contend that they raise only the legal issues of whether Abel's use of deadly force was objectively unreasonable, and, even if it was, whether any violation was clearly established.

### A. England's Excessive Force Claim

#### 1. Constitutional Violation

England may show that Abel violated his constitutional right to be free from excessive force by demonstrating that the force used was objectively unreasonable. *See Graham v. Connor*, 490 U.S. 386, 393-95 (1989). The use of deadly force is objectively unreasonable "unless an officer has probable cause to believe a suspect poses an immediate threat of serious physical harm to the officer or others." *Lee v. Russ*, 33 F.4th 860, 863 (6th Cir. 2022) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

The district court held that genuine disputes of material fact existed as to whether the deadly force Abel used against England—shooting him twice in the torso—was objectively unreasonable. *See England*, 2021 WL 5998530, at *7. The district court found two critical factual

disputes. The first is whether England was handcuffed; in the light most favorable to England, the record showed that the officers succeeded in handcuffing him—with Abel fastening the second handcuff himself. *Id.* The second dispute regards the cause of Abel moving forward over the patio door just before shooting England. *Id.* In the light most favorable to England, Abel fell forward because of gravity, not because England lunged forward. *Id.* The district court reasoned that whether Abel used excessive force, *i.e.*, whether the use of force was objectively unreasonable, "turns on these questions of fact." *Id.*

Defendants argue that there is no dispute that Abel's use of force was reasonable, wholly failing to concede the facts in England's favor. *See Adams*, 946 F.3d at 948. For example, Defendants argue that "it was reasonable to believe that England posed an immediate threat to [Abel's] safety" because "England had lunged forward, dragging [him] over a walled partition" and "was resisting arrest and attempting to evade arrest when he was shot." The district court correctly credited England's version of the facts and drew inferences in his favor in denying qualified immunity. Defendants fail to explain why, given the district court's factual determinations and inferences, Abel prevails on his claim of qualified immunity *as a matter of law*. *See Johnson*, 515 U.S. at 313. Indeed, Defendants admit elsewhere that "England's suggested fact-pattern would very likely defeat summary judgment." The district court did not err in determining that disputes of material fact exist on this record.

Defendants next invoke *Heck*, a decision that bars a plaintiff's § 1983 claim "if success on that claim 'would necessarily imply the invalidity' of an underlying state criminal conviction." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014) (quoting *Heck*, 512 U.S. at 487). If *Heck* applies, a plaintiff "has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of

habeas corpus." *Heck*, 512 U.S. at 489. We have applied *Heck* to bar § 1983 excessive force claims in two circumstances: (1) when the crime of conviction included the lack of excessive force as an element and (2) when the plaintiff could have raised excessive force as an affirmative defense to the crime. *Hayward*, 759 F.3d at 608.

Defendants' arguments here conflate *Heck* with the separate doctrine of issue preclusion. Below, Abel argued that *Heck* barred England's "new allegations" that he was not resisting arrest and his "new" factual claim that he did not lunge forward because England had pled guilty to a resisting-arrest complaint that asserted he "struggled with officers" and "lunged forward dragging an officer over a walled partition." Abel framed his analysis through a traditional *Heck* lens, arguing that, in Ohio, a conviction for resisting arrest requires a lawful arrest—one without excessive force. The district court therefore undertook a *Heck* analysis, ultimately holding that England's claim would not necessarily undermine his resisting arrest conviction. But the former idea—that *Heck* bars England from asserting and relying on certain facts to support his claim—is different, more akin to issue preclusion. *Heck*, as we know it, bars *claims*, and Defendants did not expressly argue that *Heck*'s underlying logic should be extended to bar fact issues as well. Nor did they expressly raise or develop an issue-preclusion defense before the district court or this court.[1] The issue is not before this court.

In sum, we agree with England that the issues Defendants raise regarding the first prong of qualified immunity are fact-based challenges that we do not have jurisdiction to review.

---

[1] Two days before argument, Defendants filed a letter pursuant to Federal Rule of Appellate Procedure 28(j) providing supplemental existing authority to support an argument raised for the first time—issue preclusion. This late-breaking letter does not preserve the issue-preclusion argument for our review when Defendants failed to develop it at the district court or in their appellate briefing. *United States v. Maliszewski*, 161 F.3d 992, 1015 (6th Cir. 1998).

2.        Clearly Established Law

Defendants also argue that the district court erred in holding that England's right to be free from excessive force was clearly established. The district court held that England met his burden on this second prong of the qualified immunity analysis because it was clearly established at the time Abel shot England that using deadly force on a suspect that was "subdued and nondangerous" and "not the source of any threat" violated the Constitution. *England*, 2021 WL 5998530, at \*8. The district court's holding was predicated on its finding the facts detailed above. *See id.*

Like their argument concerning the first prong of qualified immunity, Defendants' argument regarding prong two improperly "rest[s] . . . on their own version of the disputed facts and the inferences they would draw from them." *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 611 (6th Cir. 2015). The Defendants argue that "there is no legal authority that a police officer may not use deadly force to stop himself from getting dragged over a walled partition . . . while attempting to arrest a violent and resisting felon." This formulation of Abel's conduct completely disregards the district court's findings of fact. Accordingly, we also lack jurisdiction to review Defendants' argument regarding the second prong of qualified immunity.

In sum, Defendants' arguments regarding Abel's entitlement to qualified immunity are contingent on resolving, in Defendant's favor, factual disputes identified by the district court. This court is not vested with jurisdiction to do so; accordingly, we grant England's motion to dismiss the appeal for lack of jurisdiction. *See Gillispie v. Miami Township*, 18 F.4th 909, 917-18 (6th Cir. 2021).

**B.        England's Motion for Sanctions**

England moves for sanctions, arguing that Defendants' fact-based appeal is frivolous. "If a court of appeals determines that an appeal is frivolous, it may . . . award just damages and single

or double costs to the appellee." Fed. R. App. P. 38. Appeals "obviously without merit and [] prosecuted for delay, harassment, or other improper purposes" are frivolous. *McDonald v. Flake*, 814 F.3d 804, 816 (6th Cir. 2016) (quoting *Bridgeport v. Music, Inc. v. Smith*, 714 F.3d 932, 944 (6th Cir. 2013)). Interlocutory appeals of denials of qualified immunity "can be employed for the sole purpose of delaying trial," *Yates v. City of Cleveland*, 941 F.2d 444, 448 (6th Cir. 1991), and "litigants have been on notice for more than two decades that fact-intensive claims of entitlement to qualified immunity 'can consume inordinate amounts of appellate time,'" *Gillispie*, 18 F.4th at 919 (quoting *Johnson*, 515 U.S. at 316). While "it is important to protect public officials from frivolous claims and burdens of trials, it is also important to curtail the outlay and delay of litigation, so that victims of official misconduct may receive the vindication that is their due." *Yates*, 941 F.2d at 449 (quoting *Abel v. Miller*, 904 F.2d 394, 396 (7th Cir. 1990)).

Undoubtedly, Defendants' interlocutory appeal and refusal to accept the factual disputes found by the district court have caused delay. Based on the entire record, however, we conclude that this appeal does not rise to the level of sanctionable conduct.

### III. CONCLUSION

For the foregoing reasons, we **DISMISS** Defendants' appeal for lack of jurisdiction, and we **DENY** England's motion for sanctions.